STATE OF NORTH CAROLINA v. JESSE LEE BRAXTON

No. COA06-848

(Filed 1 May 2007)

**1. Appeal and Error— preservation of issues—failure to assign error or present argument**

Defendant's appeal of his convictions for assault on a female and for obtaining habitual felon status are deemed abandoned because defendant failed to assign error or present any argument on appeal as required by N.C. R. App. P. 10(a).

**2. Kidnapping— first-degree—restraint—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of first-degree kidnapping based on alleged insufficient evidence of restraint, because: (1) there was sufficient evidence of defendant's restraining the victim by means of pinning her on the bed by pushing his knee into her chest and by grabbing her hair and preventing her from escaping from him; and (2) these acts were separate and independent acts from his assaulting her by means of strangulation.

**3. Assault— by strangulation—motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss the charge of assault by strangulation, because: (1) the State was not required to prove that the victim had a complete inability to breathe in order to prove the elements of assault by strangulation; and (2) there was sufficient evidence that defendant applied sufficient pressure to the victim's throat such that she had difficulty breathing.

**4. Obstruction of Justice— intimidating witness by threats— motion to dismiss—sufficiency of evidence**

The trial court did not err by denying defendant's motion to dismiss one of the eleven charges of intimidating a witness by threats under N.C.G.S. § 14-226, but the court should have dismissed the remaining ten counts, because: (1) the voice mail message defendant left for the victim is the only incident from which the jury could have found that defendant committed the offense of intimidating a witness; (2) defendant's strong and harsh language, coupled with the evidence of their volatile and violent

relationship, constituted sufficient evidence such that a reasonable mind could find the message to be threatening; and (3) the victim's testimony that defendant told her at least ten times not to testify is insufficient to show that defendant threatened her in any way during the numerous calls on 18 August 2005.

## 5. Appeal and Error— preservation of issues—failure to argue plain error

Although defendant contends the trial court committed plain error by allegedly failing to ensure a unanimous verdict as to each separate count of the charges of intimidating a witness and assault by strangulation, this assignment of error is dismissed, because: (1) an empty assertion of plain error, without supporting argument or analysis of prejudicial impact, does not meet the spirit or intent of the plain error rule; and (2) defendant failed to argue specifically and distinctly that these issues amounted to plain error as required by N.C. R. App. P. 10(c)(4).

Appeal by defendant from judgment entered 26 January 2006 by Judge Zoro J. Guice, Jr. in Jackson County Superior Court. Heard in the Court of Appeals 20 February 2007.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Kathleen U. Baldwin, for the State.*

*Kathryn L. VandenBerg, for defendant-appellant.*

JACKSON, Judge.

Jesse Lee Braxton ("defendant") and Michelle Russell ("Russell") had been dating for several months when they moved to Sylva, North Carolina. At approximately 6:00 a.m. on 2 July 2005, Russell returned to the motel room in which she and defendant were staying. She had been out all night with a friend, attending to the friend's wife who had attempted to commit suicide. Russell testified that she thought defendant had been drinking, and that he was angry at her for staying out. Defendant and Russell began arguing, and the argument quickly became physical. Russell testified that defendant grabbed her hair, threw her onto the bed, and grabbed her throat. They continued to wrestle and fight on the bed. Russell testified that defendant grabbed her by the throat five separate times, and once put his knee hard on her chest pinning her to the bed. She stated that she experienced difficulty breathing during four of the times in which defendant grabbed her by the throat. At a point when they were near the foot

of the bed, Russell was able to escape from defendant and lock herself in the bathroom.

Russell banged on the bathroom wall, hoping that someone in the motel office would hear. Defendant kicked on the bathroom door a few times and then stopped. After a short while, Russell heard defendant talking on the phone and she ran for the motel room door. She testified that defendant grabbed her by her hair, pulled her onto the bed, and covered her mouth and throat because she was screaming. After a couple of seconds, one of the motel owners knocked on the door. Russell asked the owner to call the police, and defendant left the room.

Russell testified she suffered bruises on her neck, chest, and arms as a result of the incident. Photos of the bruises taken by police a few days later showed several bruises and scratches on Russell's arms, chest, and neck. A police officer, who interviewed Russell at the motel on the day of the assault, testified that Russell had marks on the right side of her neck and on her arms. Russell told the officer that defendant had tried to kill her. She said defendant had put his hands over her mouth and nose. Defendant was arrested and jailed later that day. At some point on 2 July 2005, defendant called Russell from jail and left a voice mail message, saying that when he got out he would give her a taste of her own medicine.

A preliminary hearing was held in this case on 16 August 2005, and Russell testified at the hearing. On 18 August 2005, Russell received several phone calls from defendant. They spoke for a total of four to five hours, and she occasionally hung up, but then continued talking when he called back. Defendant asked her why she had testified at the preliminary hearing. He also asked her "at least ten" times not to testify in the future. Defendant instructed Russell to write an affidavit saying her previous statements to police were false and that she made up the charges due to problems with the medication she took to treat her bipolar disorder. The couple also discussed their relationship and possible reconciliation.

On 26 August 2005, Russell delivered a letter she had written to the District Attorney stating that her allegations against defendant were false. At trial, she testified that much of the letter was false, and that her trial testimony about the assaults in the motel room was the truth. She testified that defendant suggested most of the content of the letter, but that she was alone when she wrote it.

STATE v. BRAXTON

[183 N.C. App. 36 (2007)]

Defendant was indicted on one count of first-degree kidnapping, five counts of felony assault by strangulation, two counts of assault on a female, eleven counts of intimidating a witness, and for obtaining the status of habitual felon. At the close of the State's evidence, the State dismissed one count of assault by strangulation. On 26 January 2006, the jury found defendant guilty of one count of second-degree kidnapping, two counts of assault by strangulation, one count of assault on a female, eleven counts of intimidating a witness, and of being a habitual felon. Defendant was acquitted on two counts of assault by strangulation and one count of assault on a female. Defendant was sentenced to three consecutive terms of imprisonment of 133-169 months. Defendant's first sentence consolidated his habitual felon conviction with all of the intimidating a witness convictions. His second sentence was for the kidnapping offense, and his third sentence consolidated all of the assault offenses. Defendant appeals from his convictions.

[1] We begin by noting that defendant has failed to assign error to or present any argument on appeal regarding his convictions for assault on a female or his obtaining habitual felon status. As such, defendant's appeal of these convictions is deemed abandoned. See N.C. R. App. P. 10(a) (2006) ("[T]he scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule 10."); N.C. R. App. P. 28(b)(6) (2006) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.").

[2] Defendant first contends the trial court erred in denying his motion to dismiss the charge of first degree kidnapping based upon insufficiency of the evidence.

In reviewing a defendant's motion to dismiss based upon insufficiency of the evidence,

> The trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion. In considering a motion to dismiss, the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence. The trial court must also resolve any contradictions in the evidence in the State's favor.

The trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility.

*State v. Parker*, 354 N.C. 268, 278, 553 S.E.2d 885, 894 (2001) (internal citations and quotation marks omitted).

In order to survive a motion to dismiss the charge of first degree kidnapping, the State must present substantial evidence that the defendant 1) unlawfully confined, restrained, or removed from one place to another, 2) a person sixteen years of age or older, 3) without that person's consent, and 4) the confinement, restraint, or removal was for the purpose of a) facilitating the commission of any felony, or b) doing serious bodily injury to the person confined, restrained or removed. N.C. Gen. Stat. § 14-39(a) (2005). On appeal, defendant specifically contends there was insufficient evidence of the element of restraint or restraint for the purpose of inflicting serious bodily injury. Defendant further argues that even if there was evidence of restraint, the restraint used was inherent in the felony of assault by strangulation, and thus not sufficient to satisfy the elements of first degree kidnapping.

It is well established that in order to satisfy the requirements for proving kidnapping, the restraint done which is to constitute the kidnapping, must be "a separate, complete act, independent of and apart from the other felony." *State v. Fulcher*, 294 N.C. 503, 524, 243 S.E.2d 338, 352 (1978); *see also State v. Key*, 180 N.C. App. 286, 289-90, 636 S.E.2d 816, 820 (2006); *State v. Boyce*, 175 N.C. App. 663, 665-66, 625 S.E.2d 553, 555 (2006). The restraint must be "separate and apart from that which is inherent in the commission of the other felony." *Id.* at 523, 243 S.E.2d at 351.

In the instant case, Russell testified that defendant pinned her down on the bed by pushing his knee into her chest, thereby restricting her ability to escape from him. Russell testified that defendant pushed his knee into her chest with such force that it hurt her. Russell's additional testimony showed that each time defendant threw her onto the bed, he grabbed her throat tight enough that she had difficulty breathing. Moreover, Russell testified that twice during the assault defendant grabbed her by the hair. She stated that at the beginning of the assault defendant grabbed her by the hair and threw her on the bed, and then grabbed her by the throat. Russell also stated that when she came out of the bathroom and ran for the motel room door, defendant grabbed her hair and pulled her back, thereby preventing her from leaving. Based upon Russell's testimony, we hold

there was sufficient evidence of defendant's restraining Russell by means of pinning her on the bed by pushing his knee into her chest and by grabbing her hair and preventing her from escaping from him.

Defendant contends this amount of restraint is inherent in the commission of the felony of assault by strangulation. We disagree. The offense of assault by strangulation requires only that an individual assault another person and inflict physical injury by strangulation. *See* N.C. Gen. Stat. § 14-32.4(b) (2005). There is nothing in the statutory definition of assault by strangulation which requires proof that the perpetrator restrained the victim in any manner, with the exception of the act of strangulation.

Here, defendant's act of pinning Russell on the bed by pushing his knee into her chest, his grabbing of her hair, and his preventing her from leaving the motel room were separate and independent acts from his assaulting her by means of strangulation. As such, there was sufficient evidence of defendant's restraint of Russell to satisfy the elements of first degree kidnapping. Defendant's motion to dismiss the charge of first degree kidnapping was properly denied, and defendant's assignment of error is overruled.

**[3]** Defendant next contends the trial court erred in denying his motion to dismiss the charges of assault by strangulation. Defendant argues there was insufficient evidence of an actual strangulation.

The offense of assault by strangulation was enacted by our General Assembly in 2004, and has yet to be interpreted by our courts. North Carolina General Statutes, section 14-32.4(b) provides that "[u]nless the conduct is covered under some other provision of law providing greater punishment, any person who assaults another person and inflicts physical injury by strangulation is guilty of a Class H felony." N.C. Gen. Stat. § 14-32.4(b) (2005). Section 14-32.4 does not define the term "strangulation."

"Statutory interpretation properly begins with an examination of the plain words of the statute." *Correll v. Division of Social Services*, 332 N.C. 141, 144, 418 S.E.2d 232, 235 (1992). In interpreting statutory language, "it is presumed the General Assembly intended the words it used to have the meaning they have in ordinary speech." *Nelson v. Battle Forest Friends Meeting*, 335 N.C. 133, 136, 436 S.E.2d 122, 124 (1993). When the plain meaning of a word is unambiguous, a court is to go no further in interpreting the statute than its ordinary meaning. *Id.* "But where a statute is ambiguous, judicial construction must be

used to ascertain the legislative will." *Burgess v. Your House of Raleigh*, 326 N.C. 205, 209, 388 S.E.2d 134, 136-37 (1990). It is well established that "a statute must be construed, if possible, to give meaning and effect to all of its provisions." *HCA Crossroads Residential Ctrs. v. N.C. Dept. of Human Res.*, 327 N.C. 573, 578, 398 S.E.2d 466, 470 (1990).

Defendant contends the definition of "strangulation" should be interpreted according to definitions found in dictionaries which require proof of a complete closure of one's airway causing an inability to breathe. The State contends that defendant's interpretation of "strangulation" defies not only the clear legislative intent, but also common sense. The State argues if we accept defendant's definition, the conduct of completely closing off one's airway and causing an inability to breathe would actually constitute other, more serious, offenses such as murder, attempted murder, assault with a deadly weapon with intent to kill inflicting serious injury, or assault inflicting serious injury. All of these offenses are crimes which provide for greater punishment than the Class H felony of assault by strangulation. We are inclined to agree with the State's argument.

Webster's Ninth New Collegiate Dictionary defines "strangulation" as "1: the action or process of strangling or strangulating[;] 2: the state of being strangled or strangulated; [especially]: excessive or pathological constriction or compression of a bodily tube (as a blood vessel or a loop of intestine) that interrupts its ability to act as a passage." Webster's Ninth New Collegiate Dictionary 1164 (9th ed. 1991). "Strangle" is defined as "1a: to choke to death by compressing the throat with something (as a hand or rope): THROTTLE[;] b: to obstruct seriously or fatally the normal breathing of . . . [;] c: STIFLE[.]" *Id.* At trial, the court provided the jury with the following definition for "strangulation," which came from a footnote in the pattern jury instructions, "strangulation is defined as a form of asphyxia characterized by closure of the blood vessels and/or air passages of the neck as a result of external pressure on the neck brought about by hanging, ligator [sic] or the manual assertion of pressure." *See* N.C.P.I.—Crim. 208.61 n.1 (2005).

The statute at issue, section 14-32.4(b), specifically provides that "[u]nless the conduct is covered under some other provision of law providing greater punishment," then one who assaults another by means of strangulation, and causes physical injury, has committed an act sufficient to satisfy the statutory definition. This offense is included in the section of our statutes providing for the crimes of not

only felony assault inflicting serious injury, but also assault with a deadly weapon with the intent to kill or inflict serious injury. *See* N.C. Gen. Stat. § 14-32.4(a) (2005); N.C. Gen. Stat. § 14-32 (2005).

Were we to accept defendant's definition of "strangulation" the State would·be required to show that a defendant strangled his or her victim to the point of death or close to it, in order to prove assault by strangulation. This type of conduct is provided for by other criminal offenses in our State's statutes. At trial, Russell testified to four separate incidents in which defendant grabbed her by the throat, causing her to have difficulty breathing. We hold the State was not required to prove that Russell had a complete inability to breathe in order to prove the elements of assault by strangulation. Defendant's motion to dismiss the four counts of assault by strangulation therefore was properly denied, as there was sufficient evidence that defendant applied sufficient pressure to Russell's throat such that she had difficulty breathing. Defendant's assignment of error is overruled.

**[4]** Defendant next contends the trial court erred in denying his motion to dismiss the charges of intimidating a witness by threats. Defendant argues there was insufficient evidence of threats made by him for the purpose of attempting to deter Russell from attending court, as alleged in the indictments. He contends there was not evidence presented to support the eleven separate instances of threats, as alleged in the indictments. Defendant also argues that there was no evidence that Russell felt threatened by his calls, or that defendant directly threatened her.

North Carolina General Statutes, section 14-226 provides:

If any person shall by threats, menaces or in any other manner intimidate or attempt to intimidate any person who is summoned or acting as a witness in any of the courts of this State, or prevent or deter, or attempt to prevent or deter any person summoned or acting as such witness from attendance upon such court, he shall be guilty of a Class H felony.

N.C. Gen. Stat. § 14-226(a) (2005). Each of defendant's eleven indictments for this offense alleged that defendant attempted to deter Russell from attending court by means of threats. Because the State sought to indict defendant for intimidating a witness based upon a theory of threats, the State was required to prove defendant intimidated Russell by means of threats, not by way of "menaces or in any other manner[,]" as permitted by the statute. *See State v. Silas*, 360

N.C. 377, 383, 627 S.E.2d 604, 608 (2006); *State v. Wilkinson*, 344 N.C. 198, 222, 474 S.E.2d 375, 388 (1996) ("when the indictment alleges an intent to commit a particular felony, the State must prove the particular felonious intent alleged.").

In the instant case, the jury heard evidence of a voice mail message left by defendant, in which he was angry, called Russell a "stinking nasty bitch," and stated that "you've got me under a $5,000 bond. As soon as I make it, I'm going to give you a God damn taste of your own fucking medicine." The jury also heard testimony regarding defendant and Russell's volatile relationship, including the fact that defendant previously had assaulted Russell on several occasions. Russell testified that she also had taken out charges against defendant in January of 2005, but that she decided not to proceed with those charges after defendant "made [her] feel so bad."

The jury heard additional evidence of four more calls on 18 August 2005, in which defendant specifically encouraged Russell to dismiss the charges against him, to not show up in court, and to write an affidavit to the District Attorney saying that she made everything up and that the charges were false. Defendant specifically instructed Russell as to what to include in the affidavit, and that it must state that he did not choke her and that he never intimidated her. Additional evidence showed that defendant and Russell spoke on two more occasions, but that in these conversations they discussed only defendant's jealousy problems. Russell testified that on 18 August 2005, defendant called her from jail numerous times, and that he repeatedly told her not to testify and to tell the District Attorney and defense counsel that she made up the charges against defendant due to problems with her medication for her bipolar disorder. She stated that on this evening, defendant told her at least ten times not to testify.

Based upon the evidence presented at trial, we hold that the voice mail message defendant left for Russell is the only incident from which the jury could have found that defendant committed the offense of intimidating a witness. Defendant's strong and harsh language, coupled with the evidence of their volatile and violent relationship, constituted sufficient evidence such that a reasonable mind could find the message to be threatening. Russell's testimony that defendant told her "at least ten" times not to testify is not sufficient to show that defendant threatened her in any way during the numerous calls on 18 August 2005. As such, we hold there was sufficient evi-

dence to support only one of defendant's eleven convictions for intimidating a witness, and therefore the trial court properly denied defendant's motion to dismiss as to one count. There was not sufficient evidence presented to support his convictions on the remaining ten counts, and the trial court should have dismissed these remaining counts. Therefore, ten of defendant's eleven convictions of intimidating a witness are reversed, and these ten counts are dismissed.

[5] Finally, defendant argues the trial court failed to ensure an unanimous verdict as to each separate count of the charges of intimidating a witness and assault by strangulation. Defendant argues that neither the jury instructions nor the verdict sheets required the jury to be unanimous in determining the specific factual basis for each count. As stated by defendant, the jury instructions for both offenses did not separate out the individual acts which were to constitute each count. Also, the verdict sheets for each of the intimidating a witness counts, and for each of the assault by strangulation counts, were identical with the exception of the case numbers listed on each sheet.

At trial, defendant failed to object to either the jury instructions or the verdict sheets. When asked if there were any problems with the verdict sheets, defense counsel replied "No, sir," and when asked if there were any objections to the instructions as given to the jury, defense counsel replied that there were none. On appeal, defendant relies on *State v. Holden*, 160 N.C. App. 503, 586 S.E.2d 513 (2003), *aff'd by an equally divided panel and left standing without precedential value*, 359 N.C. 60, 602 S.E.2d 360 (2004), in support of his argument that issues of jury unanimity are preserved for appellate review as a matter of law, even when no objection is raised in the trial court. However, our Supreme Court has ruled that *Holden* has no precedential value, therefore defendant's reliance on it is misplaced. *See Holden*, 359 N.C. 60, 602 S.E.2d 360.

In order to preserve a question regarding jury instructions for appellate review, Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure provides:

A party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection; provided, that opportunity was given to the party to make the objection out of the hearing of the jury, and, on request of any party, out of the presence of the jury.

**STOTT v. NATIONWIDE MUT. INS. CO.**

[183 N.C. App. 46 (2007)]

N.C. R. App. P. 10(b)(2) (2006). "However, questions concerning a jury instruction may be made the basis of an assignment of error where the action in question is specifically and distinctly contended to amount to plain error." *State v. Bartley*, 156 N.C. App. 490, 501, 577 S.E.2d 319, 325 (2003) (citing N.C. R. App. P. 10(c)(4)). Defendant's assignments of error with regards to the jury instructions and verdict sheets for these offenses do state that "Defendant asserts, in the alternative, trial error, plain error, structural. error, or constitutional error." However, an "empty assertion of plain error, without supporting argument or analysis of prejudicial impact, does not meet the spirit or intent of the plain error rule." *State v. Cummings*, 352 N.C. 600, 637, 536 S.E.2d 36, 61 (2000), *cert. denied*, 532 U.S. 997, 149 L. Ed. 2d 641 (2001). In his brief, defendant fails to argue specifically and distinctly that these issues amounted to plain error, as required by Rule 10(c)(4) of our appellate rules. Therefore, defendant has waived plain error review, and we must overrule his final assignments of error.

No error in part; Reversed in part.

Judges WYNN and STEELMAN concur.