STATE OF NORTH CAROLINA v. THEODORE JERRY WILLIAMS

No. COA06-1563

(Filed 2 October 2007)

### 1. Obstruction of Justice— attempted intimidation of witness—letter from prison—evidence not sufficient

The evidence of attempted intimidation of a witness was not sufficient where it consisted of a letter defendant wrote from jail to a witness in another case. The letter was not threatening, coercive, or menacing, does not hint at bodily harm or violence, contains no cursing, vulgarity, threatening language, maintains a courteous tone throughout, asks the witness to think things over and talk with an attorney, and urges her to follow the law.

### 2. Attorneys— unauthorized practice of law—letter from prison—evidence not sufficient

Evidence of unauthorized practice of law was not sufficient where it consisted of a letter defendant wrote from jail to a witness in someone else's case, with an attached suggested affidavit. Among other points, defendant did not hold himself out as an attorney, repeatedly urged the witness not to rely on him and to seek advice from an attorney, and the affidavit was a blank handwritten form accompanied by a handwritten paragraph suggested for inclusion, with cross-outs and corrections.

Appeal by defendant from judgment entered 22 February 2006 by Judge Mark E. Klass in Stanly County Superior Court. Heard in the Court of Appeals 22 August 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Derrick C. Mertz,, for the State.*

*Richard E. Jester for defendant-appellant.*

SMITH, Judge.

Theodore Williams (defendant) appeals from judgment entered on his convictions of attempting to intimidate a witness, practicing law without a license, and having the status of an habitual felon. We reverse.

On 13 November 2003 defendant was arrested on criminal charges unrelated to the present appeal, and was placed in the Stanly

County jail. While in jail awaiting trial, defendant became friendly with a man he knew as "Dennis Scott" or "James Scott Dennis" (hereinafter "Scott"). Scott was in jail on charges of second degree kidnapping and rape of Lea Andrea Blackwell. On 19 December 2003 defendant wrote Blackwell a letter discussing Scott's case. A jail employee read defendant's letter to Blackwell, and gave a copy to the Stanly County District Attorney. On the basis of this letter, defendant was indicted on charges of solicitation of perjury, intimidation of a witness, and practicing law without a license. Before trial, the State dismissed the charge of solicitation of perjury. The State later filed a superceding indictment that amended the charge of intimidating a witness to a charge of <u>attempted</u> intimidation of a witness. Additionally, by a separate indictment, defendant was charged with being a habitual felon.

Defendant was tried before a Stanly County jury in February 2006. Shortly before the trial, defendant's attorney was disbarred, and defendant elected to represent himself. Following the presentation of evidence, defendant was convicted of attempting to intimidate a witness, practicing law without a license, and having the status of a habitual felon. He received an active sentence of 121 to 155 months imprisonment. From these convictions and judgment, defendant timely appealed.

[1] Defendant argues first that the trial court erred by denying his motion to dismiss the charges against him of unauthorized practice of law and attempting to intimidate a witness, on the grounds that the evidence was insufficient to submit the charges to the jury. We agree.

When a criminal defendant moves for dismissal on the grounds that the evidence is legally insufficient:

The trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion. In considering a motion to dismiss, the trial court must analyze the evidence in the light most favorable to the State and give the State the benefit of every reasonable inference from the evidence. The trial court must also resolve any contradictions in the evidence in the State's favor. The trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility.

*State v. Parker,* 354 N.C. 268, 278, 553 S.E.2d 885, 894 (2001) (internal quotation marks and citations omitted).

In the instant case, the physical evidence against defendant consisted entirely of the letter defendant wrote to Blackwell. Defendant does not dispute that he wrote the letter and addressed it to Blackwell. Therefore, the only question is whether the letter provided a legally sufficient basis to convict defendant of the charged offenses. The letter was handwritten on paper provided by the Stanly County jail, and reads as follows:

Dear Lea,

Hello, I hope this letter finds you in good health and spirits. First of all, please let me apologize for intruding into your affairs, but please let me assure you I mean no harm in any way, and I'm simply trying to help you and another person whom I have recently established a friendship with.

Lea, I'm writing this letter because I've unfortunately been dealing with the law for more than 20 years and let me testify and I don't like to see it ruin people's lives. So please don't get angry or upset, and please hear me out before you render a decision. Lea, Scott is in jail for some very serious charges, charges of which if he is convicted could seriously ruin the rest of his life, not to mention cause him to spend the next 10 to 15 years in prison. So no matter how angry you are, let me ask you a question. Is that what you want?

Even if Scott is not convicted, he could easily spend the next two or three years in jail awaiting a trial. That will most likely be the case. Because if you don't show up for court, the district attorney will just keep asking the Judge for a continuance until he gets you served with a subpoena. All the while, Scott will be kept in jail.

Now, if you don't show up after being subpoenaed, the Judge can order you arrested and then held in jail until Scott's trial, which is the law, meaning you will not have a bond, but rather held in jail until the State's through with you or until Scott's next court date. Further, Lea, I haven't known Scott that long, but he just doesn't strike me as the rapist type. Now, I don't know what happened, I wasn't there, and I am not disputing what you said. But Scott swears he didn't do what you said, and several people are prepared to testify he didn't either.

What I'm trying to say is, if you take the stand and get caught in a lie, it's called perjury. I also understand you have quite a record yourself. Well, if you get convicted of perjury, it could mean you have to do five to seven years in prison mandatory. I'm sure you don't want that. Neither does Scott. Nor do I, for that matter. Prison is a terrible place to waste away. Lea, Scott tells me you're not a bad person at all. In fact, Scott still loves you and doesn't understand how things got so out of control to where neither of you can possibly benefit from all this. The best you guys can hope for is to stop this before it gets worse.

So Lea, I'm asking you to help yourself and Scott. I'm not asking you to trust me blindly, but rather go see Scott's attorney, Patrick Currie in Oakboro or call him at 983-6116 and find out for yourself if what I'm saying isn't the best course of action for you both. Lea, the best way to get Scott out of jail and not get in trouble yourself is to go to Scott's lawyer and get an affidavit. I am gonna enclose with this letter a handwritten affidavit form and a brief paragraph to what you should write on the form. This affidavit has to be notarized. If you are scared, just write the affidavit and lay low.

Lea, I hope you will listen to me. I know I don't know you, nor do you know me. But I love God and I really do wish you well. Please think about what I said and do some investigating. If you doubt me, Scott's lawyer will talk to you. Or if not that lawyer, at least find another lawyer.

Take care. Thank you. And God bless.

Sincerely, Ted Williams.

The letter separately contained a handwritten outline of the heading of a pleading, as follows:

STATE OF NORTH CAROLINA GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF STANLY CASE #
STATE OF NORTH CAROLINA )
)
Vs. ) AFFIDAVIT
)
JAMES SCOTT DENNIS )
Defendant. )

I _____ do hereby depose and say

**STATE v. WILLIAMS**

[186 N.C. App. 233 (2007)]

[Blank for several lines.]

This the _____ day of _____

Signature _____

The letter also included this handwritten paragraph:

> That James Dennis has not forced me in any [way] into having sexual relations with him. Myself and Mr. Scott have lived together for approximately three years during this time we have enjoyed mutual consensual sex for the duration of our relationship. The only reason I made the statement that lead to Mr. Dennis arrest is because I made the statement under duress and was somewhat coerced into doing so by the Detective. If called to testify in that case I will exercise my right under the 5th Amendment in order to prevent self incrimination.

We first consider whether this letter constituted sufficient evidence to support the charge of attempted intimidation of a witness. Intimidation of a witness is defined in N.C. Gen. Stat. § 14-226(a) (2005), which provides that:

> If any person shall by threats, menaces or in any other manner intimidate or attempt to intimidate any person who is summoned or acting as a witness in any of the courts of this State, or prevent or deter, or attempt to prevent or deter any person summoned or acting as such witness from attendance upon such court, he shall be guilty of a Class H felony.

Review of the relevant case law addressing the sufficiency of evidence to sustain a conviction for intimidating a witness shows that such cases generally involve a threat by the defendant to inflict bodily harm on the witness. *See, e.g., In re R.D.R.*, 175 N.C. App. 397, 400, 623 S.E.2d 341, 344 (2006) (juvenile "stood up, turned toward [witness] and mouthed the words 'I'm going to kick your a—' "); *State v. Isom*, 52 N.C. App. 331, 278 S.E.2d 327 (1981) (defendant telephoned witness and threatened to kill her daughter if witness did not drop charges); *State v. Neely*, 4 N.C. App. 475, 166 S.E.2d 878 (1969) (defendant threatened witness; Court notes that "language used would indicate physical violence").

We also find the holding of *State v. Braxton*, 183 N.C. App. 36, 643 S.E.2d 637 (2007), to be instructive. The defendant in *Braxton* was indicted on eleven counts of intimidating a witness "by means of threats." *Id.* at 43, 643 S.E.2d at 642. This Court held that, inasmuch

STATE v. WILLIAMS

[186 N.C. App. 233 (2007)]

as the indictments were based on a theory of threats, the State was required to produce evidence of threats. The evidence showed one instance where defendant left a vulgar, angry voice mail message for the witness, with abusive language and explicit threats of bodily harm. This Court held that this was sufficient to show an attempt to intimidate by means of threats, and thus to submit one count to the jury. However, the balance of the evidence on this issue showed that defendant had:

> "encouraged Russell to dismiss the charges against him, to not show up in court, and to write an affidavit to the District Attorney saying that she made everything up and that the charges were false. Defendant specifically instructed Russell as to what to include in the affidavit, and that it must state that he did not choke her and that he never intimidated her.

*Id.* at 44, 643 S.E.2d at 643. This Court held that such evidence was insufficient to show the use of threats:

> [W]e hold that the voice mail message . . . is the only incident from which the jury could have found that defendant committed the offense of intimidating a witness. Defendant's strong and harsh language, coupled with the evidence of their volatile and violent relationship, constituted sufficient evidence such that a reasonable mind could find the message to be threatening. Russell's testimony that defendant told her "at least ten" times not to testify is not sufficient to show that defendant threatened her in any way[.]

*Id.*

In the instant case, the indictment alleged that defendant had "by menaces and coercive statements attempt[ed] to deter and prevent Andrea Blackwell from attending court by sending Andrea Blackwell a letter[.]" Accordingly, as in *Braxton*, the State was required to prove that defendant attempted to intimidate Blackwell "by menaces and coercive statements." "Menace" is defined in the Oxford Encyclopedic English Dictionary 902 (Judy Pearsall and Bill Trumble, eds., Oxford University Press 2d ed. 1995) as a noun meaning "a threat" and as a verb meaning "to threaten, especially in a malignant or hostile manner." "Coerce" is defined in the Oxford Encyclopedic English Dictionary 280 as a verb meaning "persuade or restrain (an unwilling person) by force" (parentheses in original); and in Black's Law Dictionary 252 (7th ed. 1999) as a verb meaning "to compel by

force or threat." Thus, the words menace and coerce are defined as basically synonymous with "threat."

We have examined defendant's letter and find it neither threatening, coercive, or menacing. It opens with an apology for intruding and reassurance that defendant means no harm. Defendant acknowledges that he was not present when the relevant events occurred, and that his view of the situation is derived from his brief acquaintance with Scott. He admits that he does not know Blackwell, and therefore is "not disputing what [she] said." The letter cautions Blackwell to honor a subpoena if one is issued, and warns her that perjury is a criminal offense that may result in a significant prison sentence. Defendant also suggests that if Blackwell wants to end legal proceedings against Scott, she should execute an affidavit, rather than ignoring a subpoena. The letter also asks Blackwell not to rely on defendant's word, but to consult with an attorney before doing anything, gives the name and number of Scott's attorney, and asks that "if not that lawyer, at least find another lawyer." Defendant ends by asking Blackwell to think things over and to talk with an attorney.

Significantly, defendant's letter nowhere hints at bodily harm or violence against Blackwell, contains no cursing, vulgarity, or threatening language, and maintains a courteous tone throughout. Defendant's admonitions to Blackwell to honor any subpoena that might be issued and to avoid perjury are not presented as personal threats. Indeed, defendant urges Blackwell to follow the law. Our review of defendant's letter in the context of *Braxton* and other pertinent jurisprudence leads us to conclude that the letter did not constitute sufficient evidence of defendant's intentional attempt to intimidate a witness, and his conviction for this offense must be reversed.

---

[2] We next determine whether the letter and accompanying pages that defendant sent to Blackwell constituted the unauthorized practice of law. The unauthorized practice of law is barred by N.C. Gen. Stat. § 84-4 (2005), which provides in relevant part that:

> . . . [I]t shall be unlawful for any person or association of persons, except active members of the Bar of the State of North Carolina admitted and licensed to practice as attorneys-at-law, to appear as attorney or counselor at law in any action . . . and it shall be unlawful for any person . . . except active members of the Bar . . . to prepare . . . any will or testamentary disposition, or instrument of trust, or . . . any other legal document. . . .

N.C. Gen. Stat. § 84-8 (2005) makes violation of G.S. § 84-4 a Class 1 misdemeanor, and N.C. Gen. Stat. § 84-2.1 (2005) defines "practice law" in relevant part as follows:

> The phrase "practice law" as used in this Chapter is defined to be performing any legal service for any other person . . . including the preparation or aiding in the preparation of deeds, mortgages, wills, trust instruments, inventories, accounts or reports of guardians, trustees, administrators or executors, . . . or assisting by advice, counsel, or otherwise in any legal work; and to advise or give opinion upon the legal rights of any person[.] . . . [T]he above reference to particular acts . . . shall not be construed to limit the foregoing general definition of the term, but shall be construed to include the foregoing particular acts, as well as all other acts within the general definition.

The proper application of G.S. § 84-4 most often arises in commercial contexts, and has been held to bar a corporation from representing itself, *see Lexis-Nexis v. Travishan Corp.*, 155 N.C. App. 205, 209, 573 S.E.2d 547, 549 (2002) ("in North Carolina a corporation must be represented by a duly admitted and licensed attorney-at-law"); to bar an attorney working for an insurance corporation from representing an insured of the corporation, *see Gardner v. North Carolina State Bar*, 316 N.C. 285, 341 S.E.2d 517 (1986); and to prevent a corporation from offering legal services to its clients, *Seawell v. Carolina Motor Club, Inc.*, 209 N.C. 624, 184 S.E. 540 (1936). However, "[i]t was not the purpose and intent of the statute to make unlawful all activities of lay persons which come within the general definition of practicing law . . . its purpose is for the better security of the people against incompetency and dishonesty in an area of activity affecting general welfare." *State v. Pledger*, 257 N.C. 634, 637, 127 S.E.2d 337, 339 (1962).

In the instant case, defendant was charged in an indictment alleging that he had "give[n] unsolicited legal advice to Andrea Blackwell and prepare[d] a legal document, an affidavit[.]" We conclude that defendant's letter did not constitute the unauthorized practice of law. Defendant did not hold himself out as an attorney, or as having a law degree, conceding that his information on the law was acquired through twenty years of being in trouble. His "legal counsel" was limited to general advice to come to court, tell the truth, and consider executing an affidavit. This letter did not constitute preparation of a "legal document" as we interpret the statute. The

"legal document" was a blank affidavit form accompanied by a paragraph defendant suggested Blackwell might include in her affidavit. Both the blank affidavit and the paragraph were hand-written on sheets of paper supplied by the jail, and the paragraph contained cross-outs and corrections.

It is also significant that defendant repeatedly urged Blackwell not to rely on him and to seek advice from an attorney. Defendant provided the name and number of Scott's lawyer, and stressed that if she did not want to call that attorney, she should "at least find another lawyer." We further note that the sole letter that defendant wrote Blackwell does not include any suggestion of further contact between them; defendant nowhere asks her to answer his letter or suggests that he might follow up on his letter.

Defendant took it upon himself to write a letter from jail to a witness in another case, and to offer his opinions and views on the matter. In this, he was a meddlesome busybody, and may have wanted to display his "wisdom" on various matters. However, such behavior does not rise to the level of a criminal offense. The State has cited no cases, and we find none, wherein a criminal defendant was convicted of either attempted intimidation of a witness or practicing law without a license on the basis of a single letter in the nature of the letter at issue herein. We conclude that the letter was insufficient evidence to submit the charged offenses to the jury, and that defendant's convictions must be reversed. Further, as defendant's conviction of being a habitual felon was dependent upon the felony conviction of attempted intimidation of a witness, this also must be reversed.

Our resolution of this issue makes it unnecessary to address defendant's other arguments. For the reasons discussed above, we conclude that defendant's convictions must be

Reversed.

Judges McGEE and STEPHENS concur.