STROUD, Judge.
 

 *752
 
 Defendant Clayton James appeals his conviction of first degree kidnapping, injury to personal property, and assault by strangulation. On appeal, defendant argues primarily that the trial court erred by denying his motion to dismiss the first degree kidnapping charge because the evidence was insufficient to submit the charge to the jury. Because there was sufficient evidence to establish each essential element of the charge, the trial court did not err in denying defendant's motion.
 

 I. Background
 

 The State's evidence at trial tended to show the following facts. On 12 July 2014, Susan
 
 [1]
 
 was staying at her mother's house because defendant had been harassing her. Susan previously had a romantic relationship with defendant for about five and one-half years, until they broke up in February 2013 because defendant "started getting very aggressive." Susan was on her way to Food Lion on 12 July 2014 when she
 
 *753
 
 encountered defendant while walking at the intersection of Grove Street and Aycock Street. As Susan proceeded to walk across the street, defendant cut her off and confronted her, asking why she had not been answering his text messages or talking to him. Susan told him: " 'Well, you know I got a lot going on' " ... and " 'Plus, we not together anyway.' "
 

 Unsatisfied with her response, defendant became aggravated and told Susan " 'You gonna talk to me.' " Since they were out in public, it was daytime, and she had seen some kids nearby on a porch, Susan felt safe enough to tell defendant that if they were going to talk, it would be right there. Defendant told her she was going to go with him and grabbed Susan by the collar. As she struggled to get away, he punched her in the face. Defendant continued to grab Susan while in the middle of the street and eventually grabbed her by the throat and she "could feel the life leaving out of [her]." During the struggle with defendant, Susan suffered a mark on her face, bruises, abrasions on her arms and knees, a tear in her clothes, and broken glasses.
 

 Susan could feel herself blacking out. Defendant threatened to kill her "in broad daylight." Susan believed defendant meant it when he said he would kill her. She was afraid at the time and still afraid when testifying at his trial. Susan then lost consciousness, and when she woke up, she was no longer in the street, but rather was lying in a driveway on the side of the road, and she saw defendant running away. Susan also saw "the babies" (referring to the three young individuals who witnessed the incident and testified at defendant's trial) and a police officer. She had no idea how long she lost consciousness. Susan did not know how she got from the street to the driveway, but she woke up in a different place than she remembered being before losing consciousness.
 

 Jeremy was at his friend Destiny's house near the intersection where the incident occurred with Destiny and their friend Karlee when they heard Susan, a stranger, yell " 'Help' " and saw defendant use his fist to punch her in the face. He then watched defendant, also a stranger, choke Susan, and she fell to the ground. Destiny noted that defendant "had her in a headlock. He had his arm-one of his hands on her neck and also one of his arms wrapped around her
 
 *546
 
 neck, choking her." Jeremy heard defendant say to Susan, " 'I will kill you in the broad daylight, bitch.' " He then observed defendant punch and drag Susan "to the gravel." Destiny noted that defendant dragged Susan "by her hair, also with his arm around her neck" onto the gravel "about one house down, so about ten feet." She noted further that Susan appeared to be unconscious "because she wasn't at that point really moving." After seeing all this, Jeremy called 911 and spoke with dispatch. As the three witnesses got
 
 *754
 
 closer, defendant ran up the hill and left. Jeremy, Destiny, and Karlee spoke with Susan and asked if she was okay. Karlee noted that Susan " was very shaken up, she was bleeding on her face, her pants were ripped, she was bleeding from her elbow and her knees and crying[.]"
 

 Shortly after, Greensboro Police Officer Peter Abraham Witmer arrived on the scene. He saw Susan standing in a gravel driveway with Jeremy, Destiny, and Karlee. Susan "was crying, concerned about her safety. She kept asking where is the gentleman that assaulted her, very emotionally distraught." Susan told Officer Witmer what had happened, and he observed various items in the roadway including one of Susan's earrings and her glasses. He estimated that those items were about "100, 120 feet" from where he observed Susan on the gravel driveway when he arrived.
 

 Susan had two cell phones, but she lost one during the assault. About 10 minutes after the incident, Susan received a call from the missing phone. She told one of the paramedics she thought it was defendant calling from her other phone, and she told her not to answer. Susan was taken to the hospital, where she had a CAT scan. The hospital personnel asked if she wanted to stay overnight, but she declined and was released. The following Monday, July 14, Susan went to the District Attorney's office to have pictures taken of her injuries. She also visited Family Services of the Piedmont and saw a counselor for trauma and was still in a counseling program at the time of defendant's trial.
 

 On 8 September 2014, defendant was indicted for kidnapping, injury to personal property, assault by strangulation, and common law robbery. Defendant was tried by a jury beginning on 12 January 2015. At the close of the State's evidence on 15 January 2015, defense counsel moved to dismiss all of the charges "on the grounds that the evidence is insufficient as a matter of law to support a conviction." Defendant's trial counsel then stated: "With respect to the kidnapping, I do not wish to be heard further. With respect to the assault by strangulation, I do not wish to be heard further." Defendant then proceeded to raise arguments regarding common law robbery and injury to personal property.
 

 The State then had an opportunity to respond, and noted first that it was "not going to address the assault by strangulation, kidnapping, since [defense counsel] didn't raise any issues." After hearing the State's response to defendant's arguments regarding the other two charges, the trial court denied the motion. Defendant's motion to dismiss was renewed at the close of all the evidence, and again denied.
 

 *755
 
 On 15 January 2015, at the close of all the evidence, the jury returned verdicts finding defendant not guilty on the common law robbery charge but guilty on the remaining charges of first degree kidnapping, injury to personal property, and assault by strangulation. The trial court arrested judgment on the assault by strangulation and consolidated defendant's convictions for first degree kidnapping and injury to personal property. Defendant was sentenced in the presumptive range to a minimum term of 90 months and a maximum term of 120 months imprisonment in the North Carolina Department of Adult Corrections. Defendant timely appealed to this Court.
 

 II. Motion to Dismiss
 

 A. Standard of Review
 

 Defendant's first argument on appeal is that the trial court erred by denying his motion to dismiss. Specifically, defendant argues that the trial court erred by denying his motion to dismiss the first degree kidnapping charge because the evidence was insufficient as a matter of law to submit the charge to the jury.
 

 *547
 
 A defendant may move to dismiss a criminal charge when the evidence is not sufficient to sustain a conviction. Evidence is sufficient to sustain a conviction when, viewed in the light most favorable to the State and giving the State every reasonable inference therefrom, there is substantial evidence to support a jury finding of each essential element of the offense charged, and of defendant's being the perpetrator of such offense.
 

 Evidence is substantial if it is relevant and adequate to convince a reasonable mind to accept a conclusion. In considering a motion to dismiss, the trial court does not weigh the evidence, consider evidence unfavorable to the State, or determine any witness' credibility. Evidence is not substantial if it is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, and the motion to dismiss should be allowed even though the suspicion so aroused by the evidence is strong. This Court reviews the denial of a motion to dismiss for insufficient evidence
 
 de novo.
 

 State v. Robledo,
 

 193 N.C.App. 521
 
 , 524-25,
 
 668 S.E.2d 91
 
 , 94 (2008) (citations, quotation marks, brackets, and ellipses omitted). "In deciding
 
 *756
 
 whether the trial court's denial of [a] defendant's motion to dismiss violated [the] defendant's due process rights, this Court must determine whether
 
 any
 
 rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."
 
 State v. Penland,
 

 343 N.C. 634
 
 , 648,
 
 472 S.E.2d 734
 
 , 741 (1996) (quotation marks omitted).
 

 B. Analysis
 

 Defendant argues that there was insufficient evidence presented at trial to show that (1) the restraint of the victim, Susan, was not inherent to the assault by strangulation; (2) defendant removed Susan for the purpose of terrorizing her; and (3) defendant did not leave her in a safe place or seriously injured her.
 

 N.C. Gen.Stat. § 14-39(a) (2015) defines the offense of kidnapping and provides in pertinent part:
 

 Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person ... shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:
 

 ...
 

 (3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person[.]
 

 Subsection (b) of the same statute provides that the offense is first-degree kidnapping "[i]f the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted [.]" N.C. Gen.Stat. § 14-39(b).
 

 i. Restraint
 

 First, defendant contends that the State presented insufficient evidence to show that the restraint of the victim was separate and distinct from the removal required for assault by strangulation. Defendant argues that any restraint "was inherent to the assault by strangulation." Our Supreme Court has previously explained:
 

 It is self-evident that certain felonies (
 
 e.g.,
 
 forcible rape and armed robbery) cannot be committed without some restraint of the victim. We are of the opinion, and so hold, that G.S. 14-39 was not intended by the legislature to make a restraint, which is an inherent, inevitable
 
 *757
 
 feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes. To hold otherwise would violate the constitutional prohibition against double jeopardy. Pursuant to the above mentioned principle of statutory construction, we construe the word "restrain," as used in G.S. 14-39, to connote a restraint separate and apart from that which is inherent in the commission of the other felony.
 

 On the other hand, it is well established that two or more criminal offenses may grow out of the same course of action, as where one offense is committed with the intent thereafter to commit the other and is actually followed by the commission of
 
 *548
 
 the other (
 
 e.g.,
 
 a breaking and entering, with intent to commit larceny, which is followed by the actual commission of such larceny). In such a case, the perpetrator may be convicted of and punished for both crimes. Thus, there is no constitutional barrier to the conviction of a defendant for kidnapping, by restraining his victim, and also of another felony to facilitate which such restraint was committed, provided the restraint, which constitutes the kidnapping, is a separate, complete act, independent of and apart from the other felony. Such independent and separate restraint need not be, itself, substantial in time, under G.S. 14-39 as now written.
 

 State v. Fulcher,
 

 294 N.C. 503
 
 , 523-24,
 
 243 S.E.2d 338
 
 , 351-52 (1978).
 

 While defendant argues that the restraint in this case did not end until Susan was on the driveway, we agree with the State that the evidence presented at trial shows two separate, distinct restraints sufficient to support convictions for both kidnapping and assault by strangulation. After the initial restraint when defendant choked Susan into unconsciousness, leaving her unresponsive on the ground, defendant then continued to restrain her by holding her hair, wrapping one of his arms around her neck, and dragging her to a new location-a gravel driveway-100 to 120 feet away. The assault by strangulation was complete prior to the additional restraint and movement. Indeed, defendant would have been guilty of that crime even if he had left Susan at the spot where the initial assault took place. Dragging her an additional distance to the driveway added an additional restraint sufficient to support the crime of kidnapping.
 

 Defendant cites to
 
 State v. Simmons,
 

 191 N.C.App. 224
 
 ,
 
 662 S.E.2d 559
 
 (2008) in support of his argument that there was no evidence of
 
 *758
 
 restraint other than that which is inherent to the crime of assault by strangulation. In
 
 Simmons,
 
 the defendant was charged with first degree sex offense, first degree kidnapping, and burglary.
 
 Id.
 
 at 227,
 
 662 S.E.2d at 561
 
 . This Court vacated the kidnapping conviction because the defendant raped the victim in one room, the guest bedroom, and "[t]here was no evidence of confinement, restraint, or removal, other than that which is inherent to the offense of rape itself."
 
 Id.
 
 at 232,
 
 662 S.E.2d at 564
 
 . Here, by contrast, defendant was charged not with a sex offense but rather with assault by strangulation, followed by kidnapping. Defendant first strangled Susan, and then dragged her to another location, which is evidence of additional "confinement, restraint, or removal," unlike the
 
 Simmons
 
 case.
 

 Id.
 

 Defendant also cites to
 
 State v. Braxton,
 

 183 N.C.App. 36
 
 ,
 
 643 S.E.2d 637
 
 (2007) and contends that the evidence in the present case, unlike
 
 Braxton,
 
 supported only the offense of assault by strangulation. We disagree. This Court concluded in
 
 Braxton
 
 that the evidence supported a conviction for both kidnapping and assault by strangulation where "there was sufficient evidence of defendant's restraint of [the victim] to satisfy the elements of first degree kidnapping[ ]" and the defendant's "act of pinning [the victim] on the bed by pushing his knee into her chest, his grabbing of her hair, and his preventing her from leaving the motel room were separate and independent acts from his assaulting her by means of strangulation."
 
 Id.
 
 at 41,
 
 643 S.E.2d at 641
 
 .
 

 We conclude that the same result from
 
 Braxton
 
 stands here. The State presented substantial evidence indicating that after restraining Susan while strangling her, defendant took the additional step after she was unconscious to restrain her further by dragging her across the street. Accordingly, we conclude that the State's evidence at trial showed that defendant restrained Susan at two separate and distinct points in time, sufficient to support a conviction for both assault by strangulation and kidnapping.
 

 ii. Purpose
 

 Next, defendant contends that the evidence presented at trial was insufficient to support the State's theory that defendant's purpose was to terrorize Susan by restraining or removing her. Defendant points out that "the test is not whether subjectively the victim was in fact terrorized, but whether the evidence supports a finding that the defendant's purpose was to terrorize her."
 
 State
 

 *549
 

 v. Moore,
 

 315 N.C. 738
 
 , 745,
 
 340 S.E.2d 401
 
 , 405 (1986). Thus, defendant claims the State's chosen theory was that defendant's purpose was to terrorize the victim, but the evidence was
 
 *759
 
 insufficient to support such theory. Specifically, defendant claims that "there was no statement by [defendant] which would tend to support an argument that he had the specific intent to terrorize [Ms.] Goolsby." Yet the State's evidence showed that defendant did have such specific intent. Multiple witnesses heard defendant saying to Susan something along the lines of: "I'm gonna kill you, bitch. I'm gonna kill you in broad daylight, bitch. I'm gonna kill you."
 

 Defendant cites to multiple cases where this Court has found that the restraint, confinement, or movement of a person has been done for the sole purpose of terrorizing a victim, and argues that this case does not rise to the level of those cases.
 
 See, e.g.,
 

 State v. Bonilla,
 

 209 N.C.App. 576
 
 , 580,
 
 706 S.E.2d 288
 
 , 292 (2011) (defendant beat and kicked victim, "bound [his] hands and feet and placed a rag in his mouth[,]" threatened to kill him, and "forced a bottle into his rectum.");
 
 State v. Rodriguez,
 

 192 N.C.App. 178
 
 , 188,
 
 664 S.E.2d 654
 
 , 660 (2008) (defendant physically abused victims by dunking under water, burning, and dripping candle wax, and emotionally abused others by making them listen to the screams and smells of other victims);
 
 State v. Jacobs,
 

 172 N.C.App. 220
 
 , 226,
 
 616 S.E.2d 306
 
 , 311 (2005) (defendant, among other things, approached victim with rifle, grabbed by her hair, forced into vehicle, placed in headlock and choked her, then hit her with his fists).
 

 But even if defendant's actions were arguably less horrific than some of the acts of defendants in the cases noted above, defendant's argument ignores the evidence of his clear, direct intent in this case to terrorize Susan. Defendant unequivocally threatened her life and his actions demonstrated that his threat was very real and immediate. Like the defendant in Jacobs, defendant assaulted Susan, placed her in a headlock, and choked her. Defendant claims that "[t]errorizing is defined as 'more than just putting another in fear. It means putting that person in some high degree of fear, a state of intense fright or apprehension." The evidence shows that Susan was in a state of intense fright and apprehension. Several witnesses heard her yelling for help and saw defendant punching and choking her, rendering her unconscious, and then dragging her across the street. Accordingly, we find that the State presented sufficient evidence supporting its theory that defendant's purpose was to terrorize his victim.
 

 iii. Safe Place or Serious Injury
 

 Finally, defendant claims that the evidence at trial was insufficient to support the element that elevated this kidnapping to first degree: that the victim was not left in a safe place or was not seriously injured.
 

 *760
 
 Defendant points out that "safe place" is not defined by N.C. Gen.Stat. § 14-39(b) and that "our case law in North Carolina has not set out any test or rule for determining whether a release was in a 'safe place.' "
 
 State v. Sakobie,
 

 157 N.C.App. 275
 
 , 282,
 
 579 S.E.2d 125
 
 , 130 (2003). Instead, "the cases that have focused on whether or not the release of a victim was in a safe place have been decided by our Courts on a case-by-case approach, relying on the particular facts of each case."
 
 Id.
 
 at 280,
 
 579 S.E.2d at 129
 
 .
 

 Defendant argues that leaving a victim in a safe place requires a "conscious, willful action on the part of the defendant to assure that his victim is released in a place of safety."
 
 State v. Jerrett,
 

 309 N.C. 239
 
 , 262,
 
 307 S.E.2d 339
 
 , 351 (1983). According to defendant, "[t]he cases indicate that a place will be considered safe if it is familiar to the victim, or protects the victim, or affords the victim ready access to rescue." Defendant's argument is based upon drawing rather far-fetched inferences favorable to his position from the evidence. He claims that he left Susan "on the side of Grove Street, out of the roadway, a little after 5 p.m."; "there were three witnesses in close proximity";' "Susan was familiar with the street"; and "Susan also had a cell phone[,]" so she was left in a safe place. We disagree. The reasonable inferences from the evidence are contrary to those urged by defendant. Whether she was familiar with the street or not, an unconscious
 
 *550
 
 person lying on the side of a roadway or in the middle of a driveway where a car may hit her is not safe. Defendant dragged Susan to the middle of a gravel driveway, where he left her, unconscious and injured. He was not leaving her there for the purpose of consigning her to the care of the three witnesses who happened to be nearby; he was running away because they saw him. If they had not, he may have finished carrying out his threat. Even if defendant left her with one cell phone, she had started with two, and defendant took one, perhaps not realizing that she had another he missed. He did not leave her in a place of safety or protection.
 

 Furthermore, even if we were to accept defendant's interpretation of a safe place, defendant's argument would still fail since the statute requires finding
 
 either
 
 that the victim was not left in a safe place
 
 or
 
 that the victim suffered serious bodily injuries (or was sexually assaulted, which is not at issue here). N.C. Gen.Stat. § 14-39(b). Although defendant attempts on appeal to classify Susan's injuries as not serious, the evidence shows otherwise. The State presented photographs and testimony showing that the victim suffered serious injuries, including cuts and bruises to her face, abrasions to her elbows and knees, thumbprints, fingerprints, and scratches to her throat, which required treatment and
 
 *761
 
 evaluation in the emergency room. She also suffered from serious emotional trauma which required therapy for many months, even continuing through the time of the trial.
 

 We conclude, therefore, that the State presented more than sufficient evidence to support all of the essential elements of the first degree kidnapping charge. Accordingly, the trial court did not err when it denied defendant's motion to dismiss.
 

 III. Jury Instruction
 

 A. Plain Error
 

 iv. Standard of Review
 

 Next, defendant argues that the trial court erred by failing to instruct the jury on false imprisonment. Since defendant did not raise an objection to the instructions with the court below, the issue was not preserved for appeal. Accordingly, defendant asks that we review for plain error.
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings[.]
 

 State v. Lawrence,
 

 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (citations, quotation marks, and brackets omitted).
 

 v. Analysis
 

 Defendant claims that the trial court should have instructed the jury on the lesser-included offense of false imprisonment. As defendant points out, while false imprisonment is a lesser-included offense of kidnapping, the difference between the offenses is whether the act was committed with the intent to accomplish one of the purposes enumerated in N.C. Gen.Stat. § 14-39(a). Here, that purpose was "[d]oing serious bodily harm to or terrorizing the person so confined, restrained or removed...." N.C. Gen.Stat. § 14-39(a)(3).
 

 In support of this argument, defendant claims that he did not restrain and/or remove the victim "for the purpose of terrorizing her." In addition, defendant argues that even if this Court found that
 
 *762
 
 he did so restrain Susan, defendant's purpose was "unclear" and "the jury could have found that the restraint and/or removal was for a purpose
 
 other than to terrorize
 
 [Susan.]" (Emphasis added). Whatever purpose defendant may have had in his own mind at that moment, his words and actions spoke quite clearly. Several witnesses heard defendant threaten to kill Susan. Specifically, defendant was heard saying: "I'm gonna kill you in broad daylight, bitch." His actions showed this was not an idle threat. The evidence clearly supported a conclusion that
 
 *551
 
 defendant had the purpose as described in N.C. Gen.Stat. § 14-39(a)(3) to seriously harm or terrorize Susan.
 

 Moreover, defendant has failed to show that the trial court's instructions amounted to plain error. We are not convinced that this is such "exceptional case" where absent the lack of instruction on false imprisonment, the jury probably would have reached a different result. The jury had ample evidence of defendant's guilt, through the victim and multiple unbiased eyewitnesses. We conclude, therefore, that defendant has failed to show the lack of instruction on false imprisonment amounted to plain error.
 

 B. Ineffective Assistance of Counsel
 

 Finally, defendant argues that he received ineffective assistance of counsel ("IAC") because his trial counsel failed to request a jury instruction on false imprisonment.
 

 To prevail in a claim for IAC, a defendant must show that his (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense, meaning counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. As to the first prong of the IAC test, a strong presumption exists that a counsel's conduct falls within the range of reasonable professional assistance. Further, if there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient.
 

 State v. Smith,
 

 230 N.C.App. 387
 
 , 390,
 
 749 S.E.2d 507
 
 , 509 (2013) (citations, quotation marks, and brackets omitted),
 
 cert. denied,
 

 367 N.C. 532
 
 ,
 
 762 S.E.2d 221
 
 (2014).
 

 Since we have found that the trial court did not err in failing to instruct on false imprisonment, we need not address this final argument
 
 *763
 
 in more detail, as defendant cannot show either that his counsel's performance was deficient or that he was prejudiced. Accordingly, we find defendant was not denied effective assistance of counsel.
 

 IV. Conclusion
 

 In sum, we conclude that the trial court did not err when it denied defendant's motion to dismiss for insufficient evidence, as the State's evidence at trial presented ample evidence to establish each element of first degree kidnapping. We also find that the trial court did not commit plain error by not
 
 sua sponte
 
 instructing the jury on false imprisonment where substantial evidence showed that defendant threatened and terrorized her. Since the trial court did not err by not instructing the jury on false imprisonment, we further find that defendant was not denied effective assistance of counsel for failing to raise such grounds below. Accordingly, we hold that the trial court committed no error.
 

 NO ERROR.
 

 Judges DIETZ and TYSON concur.
 

 [1]
 

 We have used a pseudonym to protect the privacy of the victim.