STATE OF NORTH CAROLINA v. ANGEL E. RODRIGUEZ

No. COA07-1525

(Filed 19 August 2008)

**1. Kidnapping— first-degree—sufficiency of indictment—failure to allege victims seriously injured or not released in safe place**

The trial court erred by entering judgments against defendant for first-degree kidnapping when the indictments failed to allege necessary elements that the victims were seriously injured or not released in a safe place, and the judgments of first-degree kidnapping are vacated and remanded for entry of judgments on verdicts of guilty of second-degree kidnapping.

**2. Kidnapping— first-degree—second-degree—motion to dismiss—sufficiency of evidence—intent to terrorize—subjective fears**

The trial court did not err by failing to dismiss the first-degree and second-degree kidnapping charges based on the State's alleged failure to present sufficient substantial evidence as to each element of kidnapping based on the wording of the actual

indictments in each case because: (1) defendant did not properly preserve this issue based on his failure to object to the jury instructions, offer alternative instructions, or specifically and distinctly contend the instruction amounted to plain error; (2) a coparticipant's testimony revealed that one victim was not only removed from his apartment and taken to a house, but was confined and restrained in the process of doing so; (3) a defendant's intent is rarely susceptible to proof by direct evidence, and the jury could have inferred that defendant's intent was to terrorize based on the State's evidence that defendant physically abused some of the victims and put them in a high degree of fear for their safety and well-being, and evidence that defendant instilled an intense fear in the victims by threatening them; and (4) the victim's subjective fears are relevant in determining whether the victim was terrorized; one victim testified that he was very frightened since defendant's men seemed to get angrier and he thought they were going to kill him; another victim testified that he feared for his family's safety if he went to the police; and although three of the victims did not testify, there was evidence to support the jury's conclusion that defendant intended to terrorize them as well.

3. **Kidnapping— second-degree—failure to instruct on lesser-included offense of false imprisonment—plain error analysis**

The trial court did not commit plain error by failing to instruct on the lesser-included offense of false imprisonment in the three cases where defendant was convicted of second-degree kidnapping, based on alleged insufficient evidence to prove a purpose to terrorize, because: (1) the trial court does not have to instruct on false imprisonment if there is sufficient evidence that defendant acted with a purpose enumerated under N.C.G.S. § 14-39; (2) defense counsel did not request an instruction on false imprisonment, nor did he object or request any additional jury instruction at the charge conference; and (3) defendant failed to show that the jury probably would have convicted him of false imprisonment rather than kidnapping if the judge had given the instruction.

Appeal by defendant from judgments entered 31 July 2007 by Judge W. Osmond Smith, III, in Wake County Superior Court. Heard in the Court of Appeals 20 May 2008.

STATE v. RODRIGUEZ

[192 N.C. App. 178 (2008)]

*Attorney General Roy Cooper, by Assistant Attorney General Leonard G. Green, for the State.*

*Crumpler Freedman Parker & Witt, by Vincent F. Rabil, for defendant.*

ELMORE, Judge.

Angel Rodriguez (defendant) was charged with five counts of first-degree kidnapping and four counts of attempted first degree murder. At the close of the State's case in chief, the trial court granted defendant's motion to dismiss all counts of attempted murder and three counts of first degree kidnapping, which were allowed to proceed as second degree kidnapping.

The evidence presented by the State tended to show: Defendant, known as "The Don," rented a house at 5329 Wenesly Court in Raleigh. Defendant was informed by a friend that "El Flaco," later identified as Miguel Alvarado (Alvarado), had drugs. Pena (Pena), one of defendant's accomplices, was instructed by defendant to drive a van to Windsor Falls Apartments off of Wake Forest Road, where Alvarado lived. Defendant and several accomplices drove in a separate car, which was equipped with flashing lights and a siren. When Pena arrived, defendant instructed him to park the van at a car wash to give the appearance that Pena was washing the van. Defendant instructed Pena to keep watch for the police and to wait for a phone call. Two of the men in the car with defendant had police shirts, badges, and guns underneath their outer clothing. When these men arrived at Alvarado's apartment, they removed their outer clothing and revealed their police badges.

Approximately ten to fifteen minutes after defendant and his accomplices arrived at Alvarado's apartment, defendant called Pena and told him to come to the apartment with the van because Alvarado had been captured. Pena drove the van to the front of Alvarado's apartment. Defendant and his accomplices placed Alvarado in the van. Pena drove the van to the house at 5329 Wenesly Court.

After being driven to the house, Alvarado was confined in a bedroom and questioned about drugs by defendant and four of his accomplices. Pena testified that he heard defendant's accomplices tell Alvarado that if he did not tell them where the drugs were "it was going to go bad for him." Alvarado informed defendant and his accomplices that two disc jockeys at Ambis, a Hispanic Club, had

STATE v. RODRIGUEZ

[192 N.C. App. 178 (2008)]

cocaine. The two disc jockeys were Juan Lezama (Lezama) and Ricardo Martinez (Martinez).

Martinez and Lezama lived in Windsor Falls Apartments in the same apartment with Alvarado. Pena testified that defendant directed him and the others to follow the same pattern they had used to kidnap Alvarado to kidnap Martinez and Lezama. Martinez was alone in the apartment when defendant and his accomplices entered the apartment claiming to be police officers. Martinez testified that the four people who entered the apartment broke the phone, threw him on the ground, and put ties on his hands. Lezama testified that when he returned to the apartment, a man he did not recognize forced him inside at gunpoint. Defendant and the others acted as though they were narcotics police officers. Lezama was handcuffed, taken to the bedroom, and questioned about drugs and money. Defendant and his accomplices told Lezama that they were taking him to the police precinct. Pena was instructed to drive the van over from the car wash. Lezama and Martinez were placed in the van and their heads were covered.

Defendant and his accomplices continued to interrogate Lezama and Martinez about the location of drugs for approximately eight hours. Lezama's wife, Luz Martinez (Luz), continually made contact with defendant and his accomplices via telephone. Luz was told that no harm would come to her husband or Martinez and that they would be released in a few hours. On one occasion when Luz was allowed to speak with her husband, she informed him of her discovery that defendant and his accomplices were not police officers.

Lezama testified that while confined at 5329 Wenesly Court, he could hear a man screaming and being hit. Lezama further testified that he could smell something burning. Later, Lezama heard a window break and a person yelling for help. Lezama and Martinez saw a man come in the room with a sledgehammer. The man came towards Lezama and Martinez as if he were going to hit them with the sledgehammer. Someone screamed "hey, hey, hey, no, no." Lezama and Martinez were told that if they called the police they would be killed. The men removed the handcuffs from Lezama and Martinez and released them. Lezama saw Alvarado as he was leaving defendant's house. He testified that Alvarado looked "extremely beat up . . . his face was swollen . . . [and] he could barely run."

Because Lezama and Martinez were unable to provide defendant with information about where the drugs and money were located,

defendant's accomplices questioned Alvarado again. Pena testified that defendant's accomplices told Alvarado that they knew he was lying about having no knowledge of the drugs or the money. Alvarado eventually informed defendant's accomplices that he knew someone who could bring him drugs. Defendant allowed Alvarado to call someone, and Alvarado requested that the person on the phone bring ten to fifteen kilos of drugs. Alvarado arranged to meet the person at a fast food restaurant in Raleigh.

Defendant ordered Pena to go to the restaurant at the agreed-upon time and wait for the person bringing the drugs. While Pena was waiting for the person to arrive, defendant and the others parked in the parking lot of a hotel adjacent to the meeting place. A car matching the description given to Pena by defendant pulled into the parking lot. There were two men in the car who were later identified as Gustavo Carbajal (Carbajal) and Miguel Hernandez (Hernandez). Carbajal, the person Alvarado requested the drugs from, got into the van with Pena. Pena, with Carbajal as a passenger, and Hernandez following in the car, drove to an apartment complex off of Capital Boulevard to complete the purchase.

Defendant's accomplices had been following Pena, Carbajal, and Hernandez from a distance in the car equipped with the police lights and siren. Once Pena pulled into the apartment complex, defendant's accomplices pulled in front of Hernandez and put on their police lights and sirens. Two of defendant's accomplices got out of the car dressed as police officers, grabbed Hernandez from his car, and took him into the van. Carbajal and Hernandez were laid on the floor of the van. Pena drove Carbajal and Hernandez to the house at 5329 Wenesly Court.

Once at the house, defendant and his accomplices put Carbajal and Hernandez into a room and questioned them about where the drugs were located within Hernandez's car. Carbajal explained that the drugs were hidden and told defendant and his accomplices how to get to the hidden location. Defendant and his accomplices were still unable to find the drugs. One of defendant's accomplices brought Carbajal to the car. The car was running, so defendant's accomplice put a gun to Carbajal's ribs and told him if he tried to move the car he would be killed. Carbajal opened the compartment where the drugs were. Defendant and his accomplices removed the drugs from the car.

STATE v. RODRIGUEZ

[192 N.C. App. 178 (2008)]

Stanley Marrin (Marrin) lived at 5333 Wenesly Court. He testified that on 14 September 2005, he heard a large breaking sound, and saw a man, later identified as Carbajal, running from a broken window at the house next door. John Williams (Williams), a construction worker, was working at a house near Wenesly Court on September 14. Williams testified that he heard someone screaming for help. He saw Carbajal come from the house wearing only his underwear and bound by handcuffs. Williams testified that Carbajal seemed extremely frightened. He furthered testified that Carbajal had multiple cuts, was bleeding from a large cut on his thigh, and appeared to have had candle wax poured on him. Williams helped Carbajal hide from defendant's accomplices, who were chasing him. Williams called 911.

Raleigh police officer Branford Winston (Winston) responded to the call from the area of 5329 Wenesly Court. Winston observed Williams talking to and providing first aid to a partially clothed and handcuffed Carbajal. Winston testified that Carbajal's face was swollen and bruised, that he had melted wax on him, that there was a deep cut on his thigh, and that he was in a lot of pain. Raleigh Detective Randy Miller (Miller) testified that the window at 5329 Wenesly Court had been broken from the inside. Miller furthered testified that in the house he located an air mattress, a large duffle bag full of stacks of money, a walkie-talkie, a police badge, a bathtub full of water, two candles, a sledgehammer, a cell phone, and charger.

Defendant presented no evidence.

[1] Defendant first argues that "the trial court lacked jurisdiction to enter judgment against the defendant . . . for first degree kidnapping where the indictments . . . failed to allege necessary elements that the victims were seriously injured or not released in a safe place." We agree.

An indictment must contain "[a] plain and concise factual statement in each count which . . . asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation." N.C. Gen. Stat. § 15A-924(a)(5) (2007). An indictment is the means by which a court obtains jurisdiction to prosecute a criminal case. *State v. Stokes*, 274 N.C. 409, 411, 163 S.E.2d 770, 772 (1968).

The established rule is that an indictment will not support a conviction for a crime unless all the elements of the crime are accu-

rately and clearly alleged in the indictment. The Legislature may prescribe a form of indictment sufficient to allege an offense even though not all of the elements of a particular crime are required to be alleged. The Legislature has not, however, established a short-form indictment for kidnapping. Accordingly, the general rule governs the sufficiency of the indictment to charge the crime of kidnapping.

*State v. Jerrett*, 309 N.C. 239, 259, 307 S.E.2d 339, 350 (1983).

There are two degrees of kidnapping. N.C. Gen. Stat. § 14-39(b) (2007). The elements set forth in subsection (a) of N.C. Gen. Stat. § 14-39 are required for both degrees of kidnapping. Subsection (b) sets forth the difference between the two degrees of kidnapping. N.C. Gen. Stat. § 14-39 provides in relevant part:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

\* \* \*

(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person . . . .

\* \* \*

(b) There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured . . . the offense is kidnapping in the first degree . . . . [I]f the person kidnapped was released in a safe place by the defendant and had not been seriously injured . . . the offense is kidnapping in the second degree . . . .

N.C. Gen. Stat. §14-39(a), (b) (2007).

At issue are defendant's two first degree kidnapping convictions for the kidnapping of Alvarado and Carbajal. As to Alvarado and Carbajal, the indictments read:

The jurors for the State upon their oath present that on or about the 13th day of September, 2005, in Wake County the defendant named above unlawfully, willfully and feloniously did kidnap [vic-

tim's name], a person who has attained the age of sixteen years, by confining, restraining and removing him without the his [sic] consent, for the purpose of terrorizing and doing other serious bodily harm to him.

Both of the indictments allege the purposes of confining, restraining, and removing in accordance with N.C. Gen. Stat. § 14-39(a). However, neither indictment alleges that the victims were seriously injured or not released in a safe place. N.C. Gen. Stat. § 14-39(b) requires these additional elements to elevate a kidnapping from second degree to first degree. The State contends that the indictment was not defective because it included the language "for the purpose of . . . doing other serious bodily harm." However, "for the purpose of . . . doing other serious bodily harm" is not the same as "had been seriously injured." One refers to intent, while the other refers to the victim's actual condition. Although the State presented substantial evidence that both Alvarado and Carbajal were seriously injured while being confined, interrogated, and physically abused, it failed to include language to that effect in the indictment.

Because the indictments did not clearly allege the essential elements of first degree kidnapping—that the victims were seriously injured or not released in a safe place—they are insufficient to charge kidnapping in the first degree. However, the indictments are valid for second degree kidnapping. Because the jury found all of the elements of second-degree kidnapping beyond a reasonable doubt by virtue of its guilty verdict of first degree kidnapping, defendant stands convicted of second degree kidnapping under this indictment.

> Since all of the elements of second degree kidnapping were found beyond a reasonable doubt by the jury by virtue of its guilty verdict of first degree kidnapping, defendant under this indictment stands convicted of second degree kidnapping. Because the indictment never charged defendant with first degree kidnapping, that offense was erroneously submitted to the jury as a possible verdict. . . . We therefore hold that judgment for first degree kidnapping must be arrested and remand for resentencing on second degree kidnapping.

*State v. Moore*, 316 N.C. 328, 336-37, 341 S.E.2d 733, 739 (1986).

[2] Next, defendant argues that "the trial court erred by not dismissing the first and second degree kidnapping charges for failure of the State to present sufficient substantial evidence as to each element of

kidnapping in each case, based on the wording of the actual indictments in each case." We disagree.

Defendant asserts that the trial court's instructions to the jury were erroneous because the indictments did not allege that the victims were removed "from one place to another." Defendant, citing *Jerrett*, asserts that " 'removed' cannot be understood as sufficient to aver 'removal from one place to another' as instructed by the trial court in this case . . . ." As to Alvarado and Carbajal, the trial judge instructed the jury:

> [I]f you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant, acting together with others, unlawfully confined the alleged victim [victim's name], restrained the alleged victim [victim's name], or removed the alleged victim [victim's name] from one place to another and that [victim's name] did not to consent to this confinement, restraint or movement, and that this was for the purpose of terrorizing the alleged victim [victim's name] . . . and that alleged victim [victim's name] had been seriously injured, it would be your duty to return a verdict of first degree kidnapping of the alleged victim [victim's name].

As to Lezama, Hernandez, and Martinez, the trial judge instructed the jury:

> [I]f you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant, acting together with others, unlawfully confined the alleged victim [victim's name], restrained the alleged victim [victim's name], or removed the alleged victim [victim's name] from one place to another, and that [victim's name] did not consent to this confinement, restraint or removal, and this was for the purpose of terrorizing the alleged victim [victim's name] . . . it would be your duty to return a verdict of guilty of second-degree kidnapping of the alleged victim [victim's name].

Defendant did not object to these instructions or offer alternative instructions.

> A party may not assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection; provided, that opportu-

nity was given to the party to make the objection out of the hearing of the jury . . . .

N.C. R. App. P., Rule 10(b)(2) (2007).

> In criminal cases, a question which was not preserved by a objection noted at trial and which is not deemed preserved by rule or law without any such action, nevertheless may be made the basis of an assignment of error where the judicial action questioned is *specifically and distinctly contended* to amount to plain error.

N.C. R. App. P., Rule 10(c)(4) (2007) (emphasis added). Defendant did not specifically and distinctly contend that the jury instruction amounted to plain error as required by Rule 10(c)(4) and thus failed to properly preserve this assignment of error for appellate review.

Defendant asserts that there is no evidence that Alvarado was removed from one place to another. Pena testified about Alvarado's removal from his apartment and Alvarado's transport to the house at 5329 Wenesly Court. Pena stated that he "went to the front of the apartments where they had [Alvarado] handcuffed and I opened the side door of the van. . . . and we put him inside [the van]." Alvarado was handcuffed. Pena further testified that once they got Alvarado to the house on Wenesly Court, they "put [Alvarado in a bedroom in the house." Pena's testimony reveals that Alvarado was not only removed from his apartment and taken to the house, but was confined and restrained in the process of doing so.

Kidnapping is a specific intent crime, and therefore the State must prove that defendant unlawfully confined, restrained, or removed the victim for one of the specified purposes outlined in the statute. *State v. Moore*, 315 N.C. 738, 743, 340 S.E.2d 401, 404 (1986). Defendant argues that there was not substantial evidence of intent to terrorize the three victims of his second degree kidnapping charges, Lezama, Martinez, and Hernandez. Defendant contends that Lezama "never said he was 'terrorized' or 'extremely afraid' . . . [he] merely testified he was 'frightened.' " The Supreme Court has defined terrorizing as "putting [a] person in some high degree of fear, a state of intense fright or apprehension." *Id.* at 745, 340 S.E.2d at 405 (citation and quotations omitted).

A defendant's intent is rarely susceptible to proof by direct evidence; rather, it is shown by his actions and the circumstances surrounding his actions. *See State v. Pigott*, 331 N.C. 199, 211, 415 S.E.2d

555, 562 (1992) ("Intent is a condition of the mind ordinarily suscep-
tible of proof only by circumstantial evidence.") (citations omitted).
Intent must be determined by a jury. *State v. Moore*, 77 N.C. App. 553,
558, 335 S.E.2d 535, 538 (1985) (citing *State v. White*, 307 N.C. 42, 296
S.E.2d 267 (1982)). There are several ways the jury could have
inferred that defendant's intent was to terrorize.

First, the State presented evidence that defendant physically
abused some of the victims, putting them in a high degree of fear for
their safety and well being. Alvarado was dunked under water and
burned so severely that his skin was peeling. Carbajal had candle wax
dripped on him. Some of the victims who were not physically abused
were able to hear and smell the abuse of others within the house.
Lezama testified that he was slapped on the head after becoming
emotional. Lezama also testified that he and Martinez heard screams,
a person yelling for help, someone being hit with a fist, and smelled
something burning. Defendant's message to Lezama and Martinez was
that if they refused to talk, they would suffer the same fate as those
who were being physically abused.

Second, the State presented evidence that defendant instilled an
intense fear in the victims by threatening them. Pena testified that he
heard defendant and his accomplices tell Alvarado that if he did not
tell them where the drugs were "it was going to go bad for him."
Lezama testified that he and Martinez were blindfolded and hand-
cuffed together while being held for about twenty-four hours. When
defendant's accomplices removed Lezama and Martinez's blindfolds,
there was a person coming at them with a sledgehammer. They were
also threatened with death if they went to the police. The fear created
by defendant and his accomplices' threats was enough to prompt
Carbajal to risk jumping through a window to escape.

In *State v. Surrett*, we held that the victim's subjective fears are
relevant in determining whether the victim was terrorized. 109 N.C.
App. 344, 427 S.E.2d 124 (1993). In *Surrett*, the defendant grabbed the
victim and pushed her into his car. *Id.* at 346, 427 S.E.2d at 125. The
victim screamed, fought, and struggled with him, and the defendant
demanded that she lie down and be quiet. *Id.* The victim stated that
she was "scared to death." *Id.* at 347, 427 S.E.2d at 125. In fact, the vic-
tim was so scared that she risked injury by crawling out of the win-
dow of the defendant's moving vehicle. *Id.* at 346, 427 S.E.2d at 125.
This Court held that, "[c]onsidered in the light most favorable to the
State, this evidence would support a finding that the defendant

intended by his actions and commands to put the victim in a state of intense fright or apprehension and that he grabbed her and threw her into his car for that purpose." *Id.* at 350, 427 S.E.2d at 127.

Martinez testified that he was very frightened because the defendant's men seemed to get angrier and he thought they were going to kill him. Lezama testified that he feared for his family's safety if he went to the police. Although Alvarado, Hernandez, and Carbajal did not testify, there is evidence to support the jury's conclusion that defendant intended to terrorize them. Alvarado was dunked under water and severely burned. Carbajal was so afraid of what would happen if he remained in the house on 5329 Wenesly Court that he jumped from a window handcuffed and in only his underwear. Hernandez was held in the same room as Carbajal. Witnessing these events put a high degree of fear and apprehension in Hernandez about his fate.

**[3]** Finally, defendant argues that "the trial court committed plain error in failing to instruct on the lesser offense of false imprisonment in the three cases where [defendant] was convicted of second degree kidnapping due to insufficient evidence to prove a purpose to terrorize." We disagree.

Defendant correctly argues that false imprisonment is a necessary lesser included offense of kidnapping. *See Surrett* at 350, 427 S.E.2d at 127.

> The difference between kidnapping and the lesser included offense of false imprisonment is the *purpose* of the confinement, restraint, or removal of another person. If the purpose of the restraint was to accomplish one of the purposes enumerated in the kidnapping statute then the offense is kidnapping. If, however, an unlawful restraint occurs without any of the purposes specified in the statute the offense is false imprisonment. Thus, the State must prove that the defendant kidnapped with the intent to commit the particular felony charged in the indictment.

*Id.* at 350, 427 S.E.2d at 127-28 (citations omitted; emphasis in original). However, the trial court does not have to instruct on false imprisonment if there is sufficient evidence that the defendant acted with a purpose enumerated in N.C. Gen. Stat. § 14-39. *See, e.g., State v. Baldwin*, 141 N.C. App. 596, 605-07, 540 S.E.2d 815, 821-22 (2000) (holding that the trial court properly denied the defendant's request for a false imprisonment jury instruction because the evidence

showed that the defendant intended to terrorize the victim by forcing her to watch him to commit suicide).

Additionally, defendant's trial counsel did not request an instruction on false imprisonment, nor did he object or request any additional jury instruction at the charge conference. Thus, defendant is left with plain error as the standard of appellate review. *See* N.C. R. App. P., Rule 10(c)(4) (2007). "Plain error is error 'so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.' " *State v. Leyva*, 181 N.C. App. 491, 499, 640 S.E.2d 394, 399 (2007) (quoting *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987)). Defendant has not shown that the jury probably would have convicted him of false imprisonment rather than kidnapping if the judge had given an instruction on false imprisonment.

Accordingly, we vacate the judgments of first degree kidnapping and remand for entry of judgment on verdicts of guilty of second degree kidnapping, and for resentencing. We hold that the trial court correctly concluded that there was substantial evidence that defendant was guilty of kidnapping all five victims. Finally, we hold that the trial judge did not commit plain error by not instructing the jury on the lesser offense of false imprisonment.

Vacated and remanded in part; no error in part.

Judges WYNN and ARROWOOD concur.