STATE OF NORTH CAROLINA v. YONY ORELLAN BONILLA

No. COA10-351

(Filed 15 February 2011)

**1. Kidnapping— motion to dismiss—sufficiency of evidence— purpose to terrorize or inflict serious bodily harm—sexual assault**

The trial court did not err by denying defendant's motion to dismiss the charge of kidnapping the surviving victim. The evidence was sufficient to show that defendant's purpose was to terrorize or inflict serious bodily harm. Defendant conceded that in the light most favorable to the State, the purpose of confining and restraining the victim was to sexually assault him.

**2. Kidnapping— motion to dismiss—sufficiency of evidence— purpose to terrorize or inflict serious bodily harm—suffocation—strangulation**

The trial court did not err by denying defendant's motion to dismiss the charge of kidnapping the deceased victim. The evidence was sufficient to show that defendant's purpose was to terrorize or inflict serious bodily harm including suffocation, strangulation, fracture of the spine, and death.

**3. Homicide— first-degree murder—motion to dismiss—sufficiency of evidence—intent to kill**

The trial court did not err by failing to dismiss the charge of first-degree murder. The facts indicated that the manner of death was a result of the intentional acts of beating, suffocating, and binding the victim so tightly that it broke his spine.

**4. Criminal Law— jury instruction—flight—consciousness of guilt**

The trial court did not err by instructing the jury on flight as evidence of consciousness of guilt. The evidence was sufficient to show that defendant fled the scene after commission of the crime and took steps to avoid apprehension.

**5. Homicide— first-degree murder—predicate felony—first-degree kidnapping**

The trial court did not err by instructing the jury that they could consider, as a predicate felony to murder, that defendant killed during the perpetration of first-degree kidnapping.

**6. Kidnapping— jury instruction—plain error analysis—terrorizing—serious bodily harm**

The trial court did not commit plain error by instructing the jury on the charges of kidnapping. The trial court's instruction appropriately defined "terrorizing" and "serious bodily harm" as required for guilt of the offense of kidnapping under N.C.G.S. § 14-39.

**7. Kidnapping— jury instruction—plain error analysis—terrorizing the victim**

The trial court did not commit plain error by instructing the jury to consider kidnapping for the purpose of terrorizing the victim.

**8. Sexual Offenses— use of dangerous or deadly weapon—bottle**

The trial court did not commit plain error by instructing the jury to consider whether defendant was guilty of a sexual offense based on the use of a bottle as a dangerous or deadly weapon.

**9. Kidnapping— dead victim not released in safe place—waiver of double jeopardy argument**

The trial court did not err by concluding that the first-degree kidnapping offense committed on the deceased victim should not be vacated. Contrary to defendant's argument, a person killed during the course of a kidnapping was not released in a safe place. Further, defendant waived his double jeopardy argument by failing to raise it at trial.

Appeal by defendant from judgments entered 14 December 2009 by Judge R. Allen Baddour, Jr., in Harnett County Superior Court. Heard in the Court of Appeals 29 September 2010.

*Attorney General Roy Cooper, by Special Deputy Attorney General Danielle Marquis Elder, for the State.*

*Parish, Cooke & Condlin, by James R. Parish, for defendant-appellant.*

STATE v. BONILLA

[209 N.C. App. 576 (2011)]

BRYANT, Judge.

Where defendant bound and gagged the assault victim, threatened to kill him, and then sexually assaulted him, we uphold the trial court's denial of defendant's motion to dismiss the charge of first-degree kidnapping. Where the evidence established that the murder victim died as a result of strangulation and suffocation, with fracture of the thoracic spine as a contributing factor, and where the evidence established that defendant viciously hit and kicked the murder victim, then carried him into another room, where the murder victim was later found bound by his neck, hands, and feet, we uphold the trial court's denial of defendant's motion to dismiss the charge of first-degree murder.

*Facts*

On the afternoon of 4 February 1997, Jorge Alvarez[1] visited Javier Cortes in his apartment on North King Avenue in Dunn. Cortes shared the apartment with defendant Yony Bonilla and Alfred Gomes. Defendant and Gomes returned to the apartment about 9 p.m. Shortly after they arrived, the three roommates began to argue and fight. Cortes was knocked to the floor, where he was kicked in the stomach repeatedly. Gomes and defendant then carried Cortes into a bedroom. Alvarez pleaded with them to leave Cortes alone. Defendant and Gomes then attacked Alvarez, kicking and hitting him. Alvarez was pushed face down on the ground, his hands tied behind him, his feet bound, and a rag was placed in his mouth. Both defendant and Gomes told him they were going to kill him. They pulled Alvarez's pants and underwear down. Gomes forced a wine bottle into his rectum; after that, defendant and Gomes each had anal intercourse with Alvarez. The attackers eventually left, and, over the course of three-to-four hours, Alvarez was able to free himself, whereupon he discovered Cortes' body. Alvarez fled the apartment and called the police.

At 10:00 a.m., on 5 February 1997, Officer Robert Jenkins, of the Dunn Police Department, was the first to respond to the report of an assault in the apartment on North King Avenue. Upon entering the apartment, Officer Jenkins discovered the body of a Hispanic male in a bedroom "bound with some kind of white cord around his feet and hands." After further investigation, a warrant for defendant's arrest was issued on 5 February 1997. In September 2007, defendant was extradited from Texas on charges of first-degree murder, kidnapping, and first-degree sexual offense.

1. Pseudonyms have been used to protect the identities of the victims.

At trial, defendant presented no evidence. A jury found defendant guilty of first-degree murder, two counts of first-degree sexual offense, and two counts of first-degree kidnapping. The trial court entered judgment in accordance with the jury's verdict and sentenced defendant as a level I offender. For first-degree murder, defendant was sentenced to life in prison; for one count of first-degree sexual offense, defendant was sentenced to 240 to 297 months; and for the remaining counts of first-degree sexual offense and first-degree kidnapping, defendant was sentenced to a term of 240 to 297 months in prison. All sentences were to be served consecutively. Defendant appeals.

---

On appeal, defendant raises the following nine issues: Did the trial court err in (I) failing to dismiss the kidnapping charge as to Alvarez and (II) Cortes; and (III) failing to dismiss the charge of first-degree murder. Did the trial court err in (IV) instructing the jury on flight, (V) first-degree murder, (VI) first-degree kidnapping, (VII) kidnapping for the purpose of terrorizing the victim, and (VIII) committing a sex offense with the use of a dangerous or deadly weapon. Did the trial court err in (IX) failing to vacate the verdict on first-degree kidnapping.

*I*

**[1]** First, defendant argues that the trial court erred in failing to dismiss the charge of kidnapping Alvarez for insufficiency of the evidence. The kidnapping indictment states that defendant confined and restrained Alvarez "for the purpose of terrorizing him and doing serious bodily harm to him." Defendant contends that the evidence did not indicate his purpose was to terrorize or inflict serious bodily harm. We disagree.

Under North Carolina General Statutes, section 14-39(a), kidnapping is committed where the unlawful confinement, restraint, or removal of a person from one place to another is for the purpose of: "(3) [d]oing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person[.]" N.C. Gen. Stat. § 14-39(a)(3) (2009). "Terrorizing is defined as 'more than just putting another in fear. It means putting that person in some high degree of fear, a state of intense fright or apprehension.'" *State v. Davis*, 340 N.C. 1, 24, 455 S.E.2d 627, 639 (1995) (quoting *State v. Moore*, 315 N.C. 738, 745, 340 S.E.2d 401, 405 (1986)).

When reviewing a defendant's motion to dismiss a charge on the basis of insufficiency of the evidence, this Court determines

"whether the State presented 'substantial evidence' in support of each element of the charged offense." *State v. Chapman*, 359 N.C. 328, 374, 611 S.E.2d 794, 827 (2005); *see also State v. McNeil*, 359 N.C. 800, 803-04, 617 S.E.2d 271, 273-74 (2005) (citations omitted); *State v. Garcia*, 358 N.C. 382, 412, 597 S.E.2d 724, 746 (2004), *cert. denied*, 543 U.S. 1156, 125 S. Ct. 1301, 161 L. Ed. 2d 122 (2005). " ' "Substantial evidence" is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion.' " *McNeil*, 359 N.C. at 804, 617 S.E.2d at 274 (quoting *Garcia*, 358 N.C. at 412, 597 S.E.2d at 746 (citations omitted)). In this determination, all evidence is considered " 'in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence.' " *Id.* (quoting *Garcia*, 358 N.C. at 412-13, 597 S.E.2d at 746 (citation omitted)).

*State v. Abshire*, 363 N.C. 322, 327-28, 677 S.E.2d 444, 449 (2009).

Defendant contends that there is no indication that his purpose was to terrorize. The evidence showed that defendant beat and kicked Alvarez repeatedly while wrestling him to the floor. Defendant bound Alvarez's hands and feet and placed a rag in his mouth; because of the rag, Alvarez could no longer call for help. Both defendant and Gomes then threatened to kill Alvarez. Defendant pulled Alvarez's pants and underwear down, and Gomes forced a bottle into his rectum. At trial, Alvarez testified that he thought he was going to die. In the light most favorable to the State, the evidence is sufficient to establish some high degree of fear, intense fright, or apprehension.

Defendant also argues that there was insufficient evidence to establish he kidnapped Alvarez for "the purpose of . . . doing serious bodily harm to him." However, defendant concedes that "in the light most favorable to the State it appears that the purpose of confining and restraining [Alvarez] was to sexually assault him." Our Supreme Court has previously upheld the denial of a motion to dismiss a charge of kidnapping for the purpose of doing "serious bodily harm" where the victim suffered from a sexual assault. *State v. Richardson*, 342 N.C. 772, 467 S.E.2d 685 (1996); *State v. Thompson*, 306 N.C. 526, 294 S.E.2d 314 (1982). Therefore, we uphold the trial court's denial of defendant's motion to dismiss the charge of kidnapping.

## II

[2] Next, defendant argues that the trial court erred in failing to dismiss the charge of kidnapping Cortes. Defendant again contends that the

State failed to establish that defendant kidnapped Cortes "for the purpose of terrorizing him and doing serious bodily harm to him." We disagree.

The evidence showed that defendant and Gomes knocked Cortes to the floor, where he was kicked in the stomach repeatedly, until defendant and Gomes carried him into a bedroom, where his deceased body was later found. Associate Chief Medical Examiner Dr. Robert L. Thompson examined the body. At trial, Dr. Thompson, was admitted as an expert in forensic pathology. Dr. Thompson's testimony regarding his observations and examination of the murder victim shows the extent of bodily harm. He noted that there were three "electrical-type" cords around Cortes' neck. The cords extended down the back and were wrapped around each wrist. "The cords extended down through the lower back area, and there were six . . . cords around each lower leg [in the ankle area]. The legs and hands, legs and arms were behind the back, and the body was tied in a 'hog-tied' fashion." "The feet were pulled up behind the back, toward the neck area, and they were tied in this area. In other words, with the neck being tied, pulled close to the legs area, and the feet and legs pulled up toward the neck area in the back area." The body exhibited small lacerations to the lips and small abrasions to both the right and left side of the face as well as the neck. There were also abrasions in the chest and abdomen area, which were consistent with injuries inflicted during a struggle. Lacerations to Cortes' right hand were consistent with defensive wounds. In Cortes' mouth were two portions of tissue paper. Dr. Thompson performed an internal examination of the body and discovered a fracture in the thoracic spine, caused by severe arching of the back. Due to the fracture, Cortes "would have been paralyzed in the lower part of his body." Dr. Thompson testified that "[t]he cause of death of Mr. [Cortes] was a combination of suffocation and strangulation, with a contributing factor being the fracture of the thoracic spine."

We hold that there is ample evidence to support the trial court's denial of defendant's motion to dismiss the charge of kidnapping Cortes where there was sufficient evidence to show that defendant's purpose was to terrorize and do serious bodily harm. Accordingly, defendant's argument is overruled.

*III*

[3] Defendant argues the trial court erred in failing to dismiss the charge of first-degree murder for insufficiency of the evidence.

Defendant contends that the manner of Cortes' death does not indicate premediation and deliberation or an intent to kill. We disagree.

"In order to convict a defendant of premeditated, first-degree murder, the State must prove: (1) an unlawful killing; (2) with malice; (3) with the specific intent to kill formed after some measure of premeditation and deliberation." *State v. Peterson*, 361 N.C. 587, 595, 652 S.E.2d 216, 223 (2007) (citing N.C.G.S. § 14-17 (2005)); *see also, State v. Hamby*, 276 N.C. 674, 174 S.E.2d 385 (1970), *judgment vacated in part on other grounds*, 408 U.S. 937, 33 L. Ed. 2d 754 (1972)).

> "An intent to kill is a mental attitude, and ordinarily it must be proved, if proven at all, by circumstantial evidence, that is, by proving facts from which the fact sought to be proven may be reasonably inferred." *State v. Cauley*, 244 N.C. 701, 708, 94 S.E.2d 915, 921 (1956), *quoted in* [*State v. Alexander*, 337 N.C. 182, 188, 446 S.E.2d 83, 87 (1994)]. "[T]he nature of the assault, the manner in which it was made, the weapon, if any, used, and the surrounding circumstances are all matters from which an intent to kill may be inferred." *Alexander*, 337 N.C. at 188, 446 S.E.2d at 87 (quoting *State v. White*, 307 N.C. 42, 49, 296 S.E.2d 267, 271 (1982)). Moreover, an assailant "must be held to intend the natural consequences of his deliberate act." *State v. Jones*, 18 N.C. App. 531, 534, 197 S.E.2d 268, 270, *cert. denied*, 283 N.C. 756, 198 S.E.2d 726 (1973).

*State v. Grigsby*, 351 N.C. 454, 457, 526 S.E.2d 460, 462 (2000).

Here, after defendant and Gomes beat and kicked him, Cortes was carried into a bedroom, where he was tied with his hands and feet behind his back. His "neck [was] tied, pulled close to the legs area, and the feet and legs pulled up toward the neck area in the back area," and two pieces of tissue were inserted into his mouth. Due to the severe arching of his back, Cortes suffered a fracture in his thoracic spine and ultimately died from "a combination of suffocation and strangulation . . . ." These facts, indicating that the manner of death was a result of the intentional acts of beating, suffocating, and binding the victim so tightly as to break his spine, were sufficient to show intent to kill. Defendant's argument is overruled.

## IV

[4] Defendant argues that the trial court erred in instructing the jury on flight as evidence of consciousness of guilt. Defendant contends

**STATE v. BONILLA**

[209 N.C. App. 576 (2011)]

that there was no evidence he fled the scene, attempted to hide or avoid detection. We disagree.

> An instruction on flight "is appropriate where 'there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime[.]' " *State v. Kornegay*, 149 N.C. App. 390, 397, 562 S.E.2d 541, 546 (2002) (quoting *State v. Irick*, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977)). " 'The relevant inquiry concerns whether there is evidence that defendant left the scene of the [crime] and took steps to avoid apprehension.' " *Id.* (quoting *State v. Levan*, 326 N.C. 155, 165, 388 S.E.2d 429, 434 (1990)). If we find "some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged, the instruction is properly given. . . ." *Irick*, 291 N.C. at 494, 231 S.E.2d at 842 (citation omitted).

*State v. Ethridge*, 168 N.C. App. 359, 362-63, 607 S.E.2d 325, 327-28 (2005).

The evidence presented indicates that, before exiting the apartment, defendant and Gomes left Cortes and Alvarez bound with cords, placed a two-by-four across the inside of the apartment door (hindering access from the outside), and exited the apartment through a window. After taking hours to free himself, Alvarez had to remove the two-by-four in order to exit. Also, despite the fact that defendant lived with Cortes, there was no indication he ever returned to the apartment. Although a warrant for defendant's arrest was issued immediately, ten years passed before defendant was extradited from Texas in September 2007. We hold that the evidence presented was sufficient to support the jury instruction on flight, since it showed that defendant fled the scene after commission of the crime and took steps to avoid apprehension. Accordingly, defendant's argument is overruled.

*V*

[5] Defendant argues that the trial court erred in instructing the jury that they could consider, as a predicate felony to murder, that defendant killed during the perpetration of first-degree kidnapping. Defendant incorporates his arguments under II, *supra*, and further contends that, if there was insufficient evidence to present the issue of kidnapping to the jury, the trial court's instruction—that the jury consider kidnapping as the predicate felony for first-degree murder

under the felony-murder rule—was error. However, finding the evidence sufficient to support the charge of kidnapping, we overruled defendant's argument under II, *supra*. Therefore, this argument is without merit.

## VI

[6] Defendant argues that the trial court committed plain error in instructing the jury on the charges of kidnapping. Specifically, defendant contends that the trial court blended the pattern jury instructions for first-degree kidnapping under N.C.P.I.—Crim. 210.20 and N.C.P.I.—Crim. 210.25 and, thus, failed to instruct the jury on the essential elements of the offense. We disagree.

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Cummings*, 361 N.C. 438, 470, 648 S.E.2d 788, 807 (2007) (quoting *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)).

"Failure to follow the pattern instructions does not automatically result in error. 'In giving instructions the court is not required to follow any particular form,' as long as the instruction adequately explains each essential element of an offense." *State v. Bunch*, 363 N.C. 841, 846, 689 S.E.2d 866, 870 (2010) (quoting *State v. Avery*, 315 N.C. 1, 31, 337 S.E.2d 786, 803 (1985)).

Under North Carolina General Statutes, section 14-39, the offense of kidnapping is committed when "[a]ny person . . . unlawfully confine[s], restrain[s], or remove[s] from one place to another, any other person[,] . . . if such confinement, restraint or removal is for the purpose of . . . (3) [d]oing serious bodily harm to or terrorizing the person so confined, restrained or removed . . . ." N.C.G.S. § 14-39(a) (2009).

Defendant specifically challenges the trial court's instruction regarding the elements of "terrorizing" and "serious bodily harm." In its instruction, the trial court stated the following:

> Terrorizing means more than just putting another in fear. It means putting that person in some high degree of fear, a state of intense fright or apprehension, or doing serious bodily injury to that person. Serious bodily injury may be defined as such physical injury as causes great pain or suffering.

The trial court's instruction clearly and appropriately defined "terrorizing" and "serious bodily harm" as required for guilt of the offense of kidnapping under N.C.G.S. § 14-39. Defendant's argument is overruled.

## VII

[7] Defendant argues that the trial court committed plain error in instructing the jury to consider kidnapping for the purpose of terrorizing the victim; however, for the reasons stated here in sections I and II, *supra*, we overrule defendant's argument.

## VIII

[8] Defendant argues that the trial court committed plain error in instructing the jury to consider whether defendant was guilty of a sexual offense with the use of a dangerous or deadly weapon. Defendant contends that the State presented no evidence of a deadly weapon and that, because the jury did not specify the ground by which it found defendant guilty of the sexual offense, his conviction should be set aside. We disagree.

Under North Carolina General Statutes, section 14-27.4,

> (a) A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:
>
> . . .
>
> (2) With another person by force and against the will of the other person, and:
>
> a. Employs or displays a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon . . . .

N.C. Gen. Stat. § 14-27.4(a) (2009).

> An instrument which is likely to produce death or great bodily harm under the circumstances of its use is properly denominated a deadly weapon. *State v. Cauley*, 244 N.C. 701, 94 S.E.2d 915 (1956); *State v. Perry*, 226 N.C. 530, 39 S.E.2d 460 (1946). But where the instrument, according to the manner of its use or the part of the body at which the blow is aimed, may or may not be likely to produce such results, its allegedly deadly character is one of fact to be determined by the jury. *State v. Perry, supra*; *State v. Watkins*, 200 N.C. 692, 158 S.E. 393 (1931).

*State v. Joyner*, 295 N.C. 55, 64-65, 243 S.E.2d 367, 373 (1978). In *Joyner*, the victim was attacked and held down by the defendant while an accomplice forcibly inserted a Pepsi-Cola bottle into her rectum. *Id.* at 65, 243 S.E.2d at 374. Our Supreme Court reasoned that, "[s]ince the bottle used [was] an instrument which, depending on its use, may or may not be likely to produce great bodily harm, the trial judge properly submitted the question regarding its deadly character to the jury." *Id.*

Here, Alvarez testified that defendant and Gomes, after tying his hands and feet, shoved a rag into his mouth, pulled his pants and underwear down, and inserted a bottle into his rectum. "I thought that it would probably be left inside, or that I was going to die or something." Later, an emergency room nurse examined Alvarez and observed a tear in his anal wall accompanied by "serious drainage." The trial court did not err in instructing the jury that it could consider whether or not the use of the bottle constituted a deadly weapon during the commission of the sexual offense. Defendant's argument is overruled.

## IX

[9] Last, defendant argues that the conviction for the first-degree kidnapping of Cortes should be vacated. Defendant contends that the evidence does not support a finding Cortes was not left in a safe place and that a conviction premised upon inflicting serious injury would violate the prohibition of double jeopardy. We do not agree with defendant's contention and overrule the second argument.

"If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree . . . ." N.C.G.S. § 14-39(b). Defendant contends that, because Cortes died, the issue of whether defendant left Cortes in a safe place is irrelevant. However, our Supreme Court has held that "unquestionably, [a] person who is killed

during the course of a kidnapping is not released in a safe place." *State v. Roache*, 358 N.C. 243, 308, 595 S.E.2d 381, 422-23 (2004). Alternatively, the record evidence indicates that Cortes was alive when defendant carried him into the bedroom. To suggest that leaving a person bound by his neck, hands, and feet so tightly that he suffers a fracture to his spine and ultimately suffocates amounts to being left in a position of safety, is an argument without merit.

As to the second portion of defendant's argument, the record does not indicate that defendant raised the double jeopardy argument before the trial court; therefore, we do not address it for the first time here. *See State v. Raines*, 362 N.C. 1, 18, 653 S.E.2d 126, 137 (2007) (affirming the defendant's two capital sentences and not considering the merits of his constitutional arguments raised for the first time on appeal).

No error.

Judges STEELMAN and ERVIN concur.