IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-416

No. COA21-663

Filed 21 June 2022

Beaufort County, No. 20CRS050770

STATE OF NORTH CAROLINA

v.

CHRISTOPHER DEMOND GRIMES

Appeal by Defendant from judgment entered 20 May 2021[1] by Judge William D. Wolfe in Beaufort County Superior Court. Heard in the Court of Appeals 10 May 2022.

*Attorney General Joshua H. Stein, by Assistant Attorney General Nicholas R. Sanders, for the State-Appellee.*

*Caryn Strickland for Defendant-Appellant.*

COLLINS, Judge.

¶ 1    Defendant appeals a judgment entered upon jury verdicts of guilty of second-degree kidnapping and assault on a female. Defendant argues (1) that the trial court erred by denying his motion to dismiss where the State failed to offer evidence of Defendant's intent; (2) that the trial court plainly erred by failing to define

---

[1] The judgment is not file stamped. Judge William D. Wolfe signed the judgment on 18 May 2021. Handwritten in the top right corner of the judgment is, "Corrected 5-20-21."

serious bodily injury in its jury instructions; and (3) that N.C. Gen. Stat. § 14-33(c)(2), which criminalizes assault on a female by a male person, is facially unconstitutional.

¶ 2        There was no error in the trial court's denial of Defendant's motion to dismiss, and no plain error in the trial court's jury instructions. Defendant's constitutional argument is unpreserved, and we decline to exercise our discretion under Rule 2 to review the statute's constitutionality.

## I.    Background

¶ 3        The evidence at trial tended to show the following: On the late evening of 7 June 2020, Defendant Christopher Demond Grimes and his girlfriend at the time, Colby Harding ("Ms. Harding"), were at the home they shared in Greenville, North Carolina. The two got into an argument about Defendant's infidelity; the situation escalated and things "got physical." Defendant "smashed [an] ice cube tray over [Ms. Harding's] head and busted [her] head," resulting in cuts and bleeding.

¶ 4        Shortly after this incident, Ms. Harding left the house alone and drove to a relative's home in Chocowinity, North Carolina. Once there, Ms. Harding was texting "back and forth" with Defendant. Defendant asked Ms. Harding if he could come get her, and she said no. Explaining that she did not want to cause "a bunch of fussing and arguing" or "a bunch of drama," Ms. Harding told Defendant that "he could come but [she] wasn't leaving with him."

¶ 5        Later that night, Defendant arrived by car at the house where Ms. Harding was staying.[2] Ms. Harding went out to meet Defendant and the couple began arguing. Ms. Harding got into the front seat of Defendant's car. She kept the door open and had one leg hanging out so that she could "try to jump out," if necessary, because she "didn't trust him." She told Defendant "she didn't want to go with him." Defendant "threw the car in reverse" and took off with the door open. When he drove off, the door shut. Ms. Harding managed to open the door and tried to get her legs out of the car while it was still moving. Ms. Harding "begged and pleaded" with Defendant to let her go, but Defendant did not stop. While driving, Defendant had "his hands around [her] neck," had her in a "chokehold," and was choking her with "one arm." According to Ms. Harding, Defendant finally pulled over when he saw the blue lights of a law enforcement vehicle behind him; she stated the entire incident lasted about two or three minutes.

¶ 6        Jimmy Stokes, a cousin of Ms. Harding's daughter, witnessed the entire altercation, and followed Defendant and Ms. Harding in his own car. Mr. Stokes called 911 and related the night's events to the operator. As he followed "two car lengths behind" them, Mr. Stokes saw Ms. Harding "trying to get out" but Defendant

---

[2] Ms. Harding testified that Defendant arrived around 2:00am or 3:00am. A cousin of Ms. Harding's daughter, Jimmy Stokes, who was at the house that evening, testified that Defendant arrived at 10:00pm or 11:00pm.

kept "grabbing her by the hair." According to Mr. Stokes, Defendant had been driving for about 15 minutes when he stopped and pulled over into a cul-de-sac. Mr. Stokes testified that once Defendant had stopped, Mr. Stokes also stopped behind him. He observed that Ms. Harding "kept trying to get out of the car" but Defendant "grabbed her again, grabbed her by her neck, and he was hitting her." Mr. Stokes stayed on the phone with 911. Once law enforcement arrived a few minutes after Defendant had stopped, Mr. Stokes left the scene and "let [law enforcement] handle it."

¶ 7 Sergeant Jason Buck ("Sgt. Buck") of the Beaufort County Sheriff's Office responded to the incident. Sgt. Buck testified that he received a radio transmission at around 4:40am notifying him that "there was an active assault occurring in a vehicle" and providing the vehicle's approximate location. Sgt. Buck arrived at the scene and initiated a traffic stop. He approached the vehicle and observed Ms. Harding in the passenger seat "very upset, crying." Ms. Harding told Sgt. Buck that the reason she had fled to her relative's house was that "she was scared of [Defendant] and thought he was going to kill her." She told Sgt. Buck that after Defendant stopped, he "held her down and grabbed her around her throat." Sgt. Buck observed that Ms. Harding "had a lot of marks on her arms, her chest area. There was redness around her neck, and she had some marks on her face and on her head." He also observed that she had marks on her neck that were "reddish" or "pinkish," as if "[s]omebody had rubbed on it or grabbed it." Photos of Ms. Harding's injuries taken

by Sgt. Buck were introduced at trial. Because the marks could not be seen very well in photographs, Sgt. Buck demonstrated on himself where he had seen the marks. Sgt. Buck also had interviewed Mr. Stokes, who related to him the evening's events.

¶ 8         Defendant was indicted on 14 September 2020 for first-degree kidnapping and assault on a female. The case came on for trial on 17 May 2021. Defendant did not put on any evidence. At the close of the State's evidence and all the evidence, Defendant moved to dismiss all charges. The trial court denied the motion. The jury convicted Defendant of second-degree kidnapping and assault on a female. The trial court entered judgment and sentenced Defendant to 30 to 48 months' imprisonment. Defendant timely appealed.

## II.    Discussion

### A. Motion to Dismiss

¶ 9         Defendant argues that the trial court erred when it denied his motion to dismiss the kidnapping charge for insufficient evidence. Specifically, Defendant argues that the State failed to offer sufficient evidence that Defendant removed Ms. Harding with the specific intent to do serious bodily harm.

### 1. *Standard of Review*

¶ 10         "Whether the State presented substantial evidence of each essential element of the offense is a question of law; therefore, we review the denial of a motion to dismiss de novo." *State v. Golder,* 374 N.C. 238, 250, 839 S.E.2d 782, 790 (2020)

(quotation marks and citation omitted).

> In ruling on a motion to dismiss, the trial court need determine only whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator. Substantial evidence is the amount necessary to persuade a rational juror to accept a conclusion. In evaluating the sufficiency of the evidence to support a criminal conviction, the evidence must be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom. In other words, if the record developed at trial contains substantial evidence, whether direct or circumstantial, or a combination, to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied.

*Id*. at 249-50, 839 S.E.2d at 790 (brackets, quotation marks, and citations omitted).

Further, any contradictions in the evidence are to be resolved in the State's favor. *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994).

### 2. *Analysis*

Pursuant to N.C. Gen. Stat. § 14-39(a)(3), a person is guilty of kidnapping if they "unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . for the purpose of . . . [d]oing serious bodily harm to or terrorizing the person so confined, restrained

or removed or any other person . . . ." N.C. Gen. Stat. § 14-39(a)(3) (2021).[3]

¶ 12    In the context of kidnapping, serious bodily harm means "physical injury [that] causes great pain or suffering." *See* N.C.P.I–Crim. 210.25 n.5 (June 2016) ("Serious bodily injury may be defined as 'such physical injury as causes great pain or suffering.' *See S. v. Jones*, 258 N.C. 89 (1962); *S. v. Ferguson*, 261 N.C. 558 (1964)."); *State v. Bonilla*, 209 N.C. App. 576, 585, 706 S.E.2d 288, 295 (2011) (holding that this definition was "clear" and "appropriate" when provided in a jury instruction on kidnapping). "Terrorizing is defined as more than just putting another in fear. It means putting that person in some high degree of fear, a state of intense fright or apprehension." *Bonilla*, 209 N.C. App. at 579, 706 S.E.2d at 292 (quotation marks and citations omitted).

¶ 13    When considering the sufficiency of the evidence regarding a defendant's intent to cause serious bodily harm, the question is "whether [the] defendant's actions could show a specific intent on his part to do serious bodily harm to [the victim]." *State v. Washington*, 157 N.C. App. 535, 539, 579 S.E.2d 463, 466 (2003). "A defendant's intent is rarely susceptible to proof by direct evidence; rather, it is shown

---

[3] The offense is kidnapping in the first-degree "[i]f the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted . . . ." N.C. Gen. Stat. § 14-39(b) (2021). The offense is kidnapping in the second-degree "[i]f the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted[.]" *Id.*

by his actions and the circumstances surrounding his actions." *State v. Rodriguez*, 192 N.C. App. 178, 187, 664 S.E.2d 654, 660 (2008).

¶ 14    In the instant case, the State presented substantial evidence from which a jury could find that Defendant's intent was to do serious bodily harm to Ms. Harding, including testimony from Ms. Harding, Mr. Stokes, and Sgt. Buck showing that: Ms. Harding drove to a relative's house "to get away from [Defendant]" after he struck her in the head with an ice cube tray. Defendant later showed up at the house and the two began arguing. Ms. Harding got in Defendant's car but left the door open and her leg hanging out, in case she needed to jump out. With the passenger door open and Ms. Harding's leg hanging out, Defendant threw the car in reverse and took off. Ms. Harding "begged and pleaded" for him to let her out; but Defendant continued driving. While driving, Defendant grabbed Ms. Harding by the hair, grabbed her around the neck with his hands, and put her in a "chokehold" using his arm. Once Defendant stopped the car, he continued grabbing Ms. Harding's hair and hitting her. He "held her down and grabbed her around the throat."

¶ 15    When viewed in the light most favorable to the State, the evidence of Defendant's "actions and the circumstances surrounding his actions" was sufficient to persuade a rational juror that Defendant removed Ms. Harding for the purpose of doing serious bodily harm. *See Rodriguez*, 192 N.C. App. at 187, 664 S.E.2d at 660.

¶ 16    Defendant contends that "the injuries [Ms.] Harding suffered were not serious

bodily [harm] under any possible meaning of that term." However, when considering whether the evidence is sufficient to show that Defendant had the specific intent to do serious bodily harm, the question is "not the extent of physical damage to the victim," *State v. Boozer*, 210 N.C. App. 371, 376, 707 S.E.2d 756, 761 (2011), but "whether [the] defendant's actions could show a specific intent on his part to do serious bodily harm to [the victim]," *Washington*, 157 N.C. App. at 539, 579 S.E.2d at 466 (rejecting defendant's argument that the state failed to provide substantial evidence of specific intent where the victim suffered only minor cuts and bruises, explaining that "the extent of physical damage to [the victim] is not in issue"). The severity of Ms. Harding's injuries is inapposite to the question of Defendant's intent, and Defendant's arguments to the contrary are overruled.

¶ 17        When viewed in the light most favorable to the State, and affording the State every reasonable inference, we conclude that the State presented substantial evidence to show that Defendant removed Ms. Harding for the specific purpose of doing serious bodily harm. *See id.* at 536-37, 540, 579 S.E.2d at 464-66. Defendant's argument is without merit.

**B. Jury Instructions**

¶ 18        Defendant next argues that the trial court plainly erred when it failed to define "serious bodily injury" in its jury instructions. Defendant argues that specific intent is an essential element of kidnapping, and thus, it is probable that a different outcome

would have occurred had the trial court defined "serious bodily injury" in its instructions to the jury.[4]

¶ 19 To show plain error, Defendant must demonstrate that a fundamental error occurred at trial. *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). "To show that an error was fundamental, a defendant must establish prejudice— that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.*

¶ 20 The trial court instructed the jury on first and second degree kidnapping in accordance with pattern jury instruction N.C.P.I.–Crim. 210.25. N.C.P.I.–Crim. 210.25 does not define "serious bodily injury" in the body of the instruction. Footnote 5 to the instruction provides, in pertinent part, "Serious bodily injury may be defined as 'such physical injury as causes great pain or suffering.' *See S. v. Jones*, 258 N.C. 89 (1962); *S. v. Ferguson*, 261 N.C. 558 (1964)." Defendant did not specifically request that the trial court give the definition in the footnote.

¶ 21 This Court has repeatedly held that where a defendant "fails to cite to any caselaw or statute which requires the trial court to define [specific] terms during its

---

[4] Pattern jury instruction N.C.P.I.–Crim. 210.25 uses the phrase "serious bodily injury" while N.C. Gen. Stat. § 14-39 uses the phrase "serious bodily harm." The phrases are used synonymously in the kidnapping context. *See Bonilla*, 209 N.C. App. at 585, 706 S.E.2d at 295 (holding that the definition of "serious bodily injury" provided in N.C.P.I.–Crim. 210.25, was an appropriate definition for "serious bodily harm"); *Boozer*, 210 N.C. App. at 376-77, 707 S.E.2d at 761-62 (using "harm" and "injury" interchangeably).

jury instruction," the defendant has failed to meet his burden under plain error review to warrant a new trial. *E.g.*, *State v. Wood*, 174 N.C. App. 790, 794, 622 S.E.2d 120, 123 (2005) (where the defendant failed to cite to any authority that required the trial court to define the terms "driving with license revoked," "negligent driving," and "reckless driving," the trial court did not commit plain error in failing to define those terms).

¶ 22        Defendant cites *Bonilla* in support of his argument that "the 'appropriate' instruction would have been that 'serious bodily injury may be defined as such physical injury as causes great pain or suffering.'" *See Bonilla*, 209 N.C. App. at 585, 706 S.E.2d at 295. But *Bonilla* did not address whether the trial court was required to define "serious bodily injury"; rather, in *Bonilla* the trial court provided the definition, and the issue on appeal was whether the provided definition was "clear" and "appropriate." Defendant has not cited to any authority requiring a trial court to define "serious bodily injury" and therefore, Defendant has failed to meet his burden under plain error. Defendant's argument is overruled.

## C. Rule 2

¶ 23        Finally, Defendant requests this Court to review the constitutionality of the offense of assault on a female, N.C. Gen. Stat. § 14-33(c)(2), which makes it a Class A1 misdemeanor for "a male person at least 18 years of age" to assault a "female." N.C. Gen. Stat. § 14-33(c)(2) (2021). Defendant argues that this statutory subsection

discriminates based on sex, and thus, is facially unconstitutional as a violation of the Fourteenth Amendment's equal protection clause.

¶ 24        Defendant concedes that he did not raise this issue at trial and therefore, the issue has not been preserved for appellate review. N.C. R. App. P. 10(a)(1) (2021); *see Anderson v. Assimos*, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002) ("A constitutional issue not raised at trial will generally not be considered for the first time on appeal."). Nonetheless, Defendant requests this Court to exercise its discretion pursuant to Rule 2 of our Rules of Appellate Procedure and review the constitutionality of N.C. Gen. Stat. § 14-33(c)(2). *See* N.C. R. App. P. 2 (providing that an appellate court may "suspend or vary the requirements or provisions of any of these rules" in order to "prevent manifest injustice to a party, or to expedite decision in the public interest"). We decline to exercise our discretion under Rule 2 to review the constitutionality of N.C. Gen. Stat. § 14-33(c)(2).

### III.    Conclusion

¶ 25        In the light most favorable to the State, the State presented sufficient evidence to show Defendant intended to remove Ms. Harding for the purpose of doing serious bodily harm. Therefore, it was not error for the trial court to deny Defendant's motion to dismiss. Further, the trial court did not plainly err in failing to define "serious bodily injury" in its jury instructions. Finally, we decline to exercise our discretion pursuant to Rule 2 and address Defendant's unpreserved argument that N.C. Gen.

Stat. § 14-33(c)(2) unconstitutionally discriminates based on sex.  We thus discern no error and no plain error in the judgment of the trial court.

NO ERROR IN PART; NO PLAIN ERROR IN PART.

Chief Judge STROUD and Judge CARPENTER concur.